En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Osvaldo R. Rivera Rodríguez<br>    Demandante-Recurrido<br><br>    V.<br><br>Departamento de Hacienda<br>    Demandado-Recurrente<br><br>Manuel Ocaña Martínez<br>    Demandante<br><br>    V.<br><br>Departamento de havcienda<br>    Demandado | Certiorari<br><br>99 TSPR 139 |

Número del Caso: CC-1998-117

Abogados del Departamento de Hacienda:    Lcdo. Héctor Clemente Delgado
                                          Procurador General Auxiliar

Abogado de Osvaldo R. Rivera:    Lcdo. A. Rosario Maisonet

Abogado de Manuel Ocaña Martínez:    Lcdo. Heriberto Torres Vázquez

Tribunal de Primera Instancia, Sala Superior de Arecibo

Juez del Tribunal de Primera Instancia: Hon. Edna Abruña Rodríguez

Tribunal de Circuito de Apelaciones: Circuito Regional III

Juez Ponente: Hon. Soler Aquino

Fecha: 9/17/1999

Materia: Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Osvaldo R. Rivera Rodríguez
     Demandante-Recurrido

        vs.

Departamento De Hacienda
     Demandado-Recurrente
----------------------------------------------------------------
CC-1998-117       Certiorari
Manuel Ocaña Martínez
     Demandante

        vs.

Departamento de Hacienda
     Demandado


Opinión del Tribunal emitida por Juez Asociado señor FUSTER BERLINGERI



San Juan, Puerto Rico, a 17 de septiembre de 1999.


Tenemos la ocasión para ampliar nuestro dictamen en Mojica v. Román Rodríguez, 116 D.P.R. 45 (1985), y pautar otras normas pertinentes sobre litigios relativos a billetes de la Lotería extraviados, cuando su supuesto titular descubre la pérdida de estos después de celebrado el sorteo en que dichos billetes resultaron premiados.

I

El 19 de junio de 1996, la Lotería de Puerto Rico (en adelante, Lotería), celebró el sorteo número 256. En dicho sorteo resultó agraciado con el primer premio el billete número 48144. Dicho premio consistía de $150,000, equivalente a $3,000 por cada fracción del billete agraciado. Conforme a las normas

que regulan este juego, la Lotería pagó de inmediato, a los portadores de las fracciones del billete referido que reclamaron, las cantidades del premio que les correspondían. Quedaron sin pagarse 20 fracciones del billete referido, que todavía están pendientes de pago.

El 24 de junio de 1996, cinco (5) días después del sorteo, Osvaldo R. Rivera Rodríguez acudió a la Lotería y alegadamente por instrucciones de la oficina central de esa agencia, suscribió y presentó allí una declaración jurada en la que indicó que por $10 había adquirido de Javier Albaladejo Santana veinte (20) fracciones del billete número 48144, agraciado con el primer premio en el sorteo antes mencionado, en la agencia número 11267 del Municipio de Barceloneta. Adujo que al momento de la compra aludida estaba acompañado de sus compañeros de trabajo Milton Román Ruiz y Luis F. Otero Nieves. Añadió que aunque había guardado los billetes referidos, no los podía presentar en la Lotería debido a que ––después de celebrado el sorteo–– se percató que se le habían extraviado. Sin embargo, manifestó que deseaba reclamar su derecho de cobro del premio aludido.[1]

---

[1] Mediante declaración jurada otorgada ante notario público el 24 de junio de 1996, Rivera Rodríguez manifestó en lo pertinente que:

1. ...

2. Que el declarante compró $10.00 de billetes de la lotería, número 48,144, correspondientes al sorteo del 19 de junio de 1996, los cuales fueron comprados en la Agencia # 11267 de Barceloneta, P.R., propiedad de la Sra. Ana M. Maldonado, serie D, sorteo #256.

3. Que dichos billetes le fueron comprados al joven Javier Albaladejo, quien es sobrino de la dueña de la referida agencia.

4. Que al momento de la compra del referido billete el declarante estaba acompañado del Sr. Milton Román y Luis F. Otero, compañeros de trabajo.

5. Que el declarante está en gestiones de construcción de la casa y los guardó en algún lugar que no encuentra en este momento y que el Sr. Osvaldo René Rivera desea reclamar el derecho de cobro del premio y quiere y desea detener cualquier pago del mismo al Departamento de Hacienda, hasta tanto se aclare la situación.

6. Que lo declarado es la verdad y nada más que la verdad.

Mediante carta del 26 de junio de 1996, el Director Auxiliar de la Lotería le indicó por escrito a Rivera Rodríguez, en lo pertinente, que en casos de billetes extraviados, destruídos o hurtados el Artículo 10 de la Ley que crea la Lotería[2] y el Artículo 56 del Reglamento para la Administración y Funcionamiento de la Lotería aprobado el 31 de marzo de 1971, según enmendado, establecen que debía "radicar ante el Director del Negociado de la Lotería o enviar por correo certificado una declaración jurada **veinticuatro (24) horas antes de celebrarse el sorteo**; indicando el número del billete, serie (letra), sorteo o fecha en que habrá de celebrarse y el número de la querella asignado por la Policía al caso". Concluyó la comunicación referida señalando que "[p]or la [razón] antes indicada se remite la misma". (Enfasis suplido.)

Inconforme con la citada determinación que en efecto le negaba el pago de las fracciones reclamadas, el 22 de agosto de 1996, Rivera Rodríguez y su esposa, María Bayón Nieves, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, una demanda contra el Director                de                        la

---

[2] Ley Núm. 465 del 15 de mayo de 1947, según enmendada, 15 L.P.R.A. secs. 111 et seq.

Lotería y el Secretario de Hacienda[3] (en adelante, Hacienda), sobre sentencia declaratoria y cobro de billetes de lotería. La parte demandante alegó ser dueña de las 20 fracciones del billete premiado antes mencionado. Indicó que dichas fracciones equivalían a $60,000 del premio y que el Director de la Lotería había negado el pago de éstas. La parte demandante añadió en lo pertinente que "los billetes o [fracciones] se le extraviaron en la propia casa y/o su esposa los echó en la lavadora de ropa, [dentro de la] camisa o pantalón, en que los guardaba", por lo que le solicitó al foro de instancia que, previa una verificación de que las fracciones reclamadas no habían sido cobradas, **ordenara a la Lotería abstenerse de pagar las mismas a otra persona** dentro de los seis (6) meses que establece la ley y le pagara los $60,000 correspondientes a su premio. Hacienda contestó oportunamente la demanda referida. Sostuvo que la parte demandante no tenía causa de acción en su contra.

En la conferencia con antelación al juicio celebrada el 14 de marzo de 1997, Hacienda le informó al Tribunal de Primera Instancia que había "otro demandante reclamando el mismo billete" en la Sala Superior de San Juan. Específicamente, el demandado le indicó al tribunal de instancia que el 16 de septiembre de 1996 Manuel Ocaña Martínez había presentado una demanda independiente contra Hacienda mediante la cual reclamaba el pago de unas fracciones de un billete de lotería extraviado. En dicha

---

[3] En el Departamento de Hacienda se creó el Negociado de la Lotería, el cual tiene a su cargo todo lo concerniente a la dirección y administración de la Lotería de Puerto Rico. Artículo 1 de la Ley Núm. 465 del 15 de mayo de 1947, según enmendada, 15 L.P.R.A. sec. 111.

demanda había alegado que había comprado en el Aeropuerto Internacional Luis Muñoz Marín dieciocho (18) fracciones del billete número 48144 y de otro, correspondientes ambos al sorteo número 256 del 19 de junio de 1996 y que después de celebrado el sorteo referido, se percató que las fracciones referidas se le habían extraviado "mientras estaba haciendo diligencias en Orlando, Florida". Ocaña Martínez solicitó que si aún no se había cobrado la participación correspondiente a las dieciocho (18) fracciones aludidas, que Hacienda se abstuviera de pagar las mismas a cualquier otra persona y que le pagara su parte correspondiente del premio. Así las cosas, el 15 de mayo de 1997 el Tribunal de Primera Instancia ordenó el traslado de la acción presentada por Ocaña Martínez a Arecibo para consolidarlo con el caso de Rivera Rodríguez.

El 13 de junio de 1997, Hacienda presentó una moción de desestimación y/o sentencia sumaria. Sostuvo en lo pertinente que la controversia planteada se podía disponer sumariamente debido a que se reducía a un asunto de estricto derecho. Fundamentó su petición indicando que como los demandantes no poseían las fracciones del billete cuyo cobro reclamaban, por tal razón no podían presentarlas para su cobro, y que no habían cumplido con el Artículo 10 de la Ley de la Lotería, infra, sobre notificación de billete perdido a la Lotería con anterioridad a la fecha de celebración del sorteo. También adujo que los demandantes tampoco habían seguido el procedimiento establecido en Mojica v. Román Rodríguez, supra, para la reclamación del pago de un billete de lotería extraviado cuando el jugador se ha percatado de su pérdida con posterioridad al sorteo en el cual resultó premiado. Finalmente, la parte demandada indicó que para todos los efectos, el Gobierno de Puerto Rico había jugado los billetes alegadamente extraviados y había resultado agraciado con la parte correspondiente del premio en cuestión, por virtud de ley.

El 15 de julio de 1997, el demandante Rivera Rodríguez presentó una moción en oposición a la mencionada solicitud de sentencia sumaria. En apoyo de su posición, Rivera Rodríguez sometió, además de la suya,

declaraciones juradas de Ana M. Maldonado, dueña de la agencia número 11267 en la que alegadamente se compró el billete premiado y de Javier Albaladejo Santana, supuesto vendedor de las fracciones del billete en controversia.[4]   Por su parte, Hacienda replicó a la oposición referida.

---

[4] Mediante declaración jurada otorgada ante notario público el 16 de mayo de 1997, la señora Ana M. Maldonado expresó en lo pertinente que:

1. ...

2. Que soy agente de la Lotería de Puerto Rico y soy dueña de la Agencia [número] 11267, localizada en Barceloneta, Puerto Rico.

3. Que entre los billetes que tenía asignados para vender estaba el billete número 48,144 del sorteo número 256, del 19 de junio de 1996, serie D.

4. Que dicho billete salió agraciado con el primer premio en el sorteo celebrado el 19 de junio de 1996.

5. Que mi sobrino Javier Albaladejo Santana vendió $10.00 del referido billete al Sr. Osvaldo R. Rivera Rodríguez.

6. Que los pedazos agraciados en el sorteo de la lotería de Puerto Rico del 19 de junio de 1996, según manifiesta el Sr. Osvaldo R. Rivera Rodríguez, le fueron extraviados, y así lo notificó [a] la Lotería de Puerto Rico mediante Declaración Jurada.

...

Mediante declaración jurada otorgada ante notario público el 19 de mayo de 1997, el señor Javier Albaladejo Santana manifestó en lo pertinente que:

1. ...

2. Que Ana M. Maldonado es dueña de la Agencia número 11267, localizada en Barceloneta, Puerto Rico, además es mi tía.

3. Que vendí al Sr. Osvaldo R. Rivera Rodríguez, $10.00 del billete de lotería número 48,144, del sorteo número 256, del 19 de junio de 1996, serie D.

4. Que dicho billete salió agraciado con el primer premio en el sorteo celebrado el 19 de junio de 1996.

5. Que los pedazos agraciados en el sorteo de la Lotería de Puerto Rico del 19 de junio de 1996, según manifiesta el Sr. Osvaldo R. Rivera Rodríguez, le fueron extraviados, y así [lo] notificó a la Lotería de Puerto Rico mediante Declaración Jurada.

...

Tras varios trámites procesales, el 23 de julio de 1997, Ocaña Martínez desistió de su reclamación.[5]

Luego de analizar los escritos presentados, el 2 de septiembre de 1997 el Tribunal de Primera Instancia dictó sentencia sumaria a favor de Rivera Rodríguez. Concluyó que el demandante había actuado diligentemente al acudir a la Lotería, al realizar la investigación del procedimiento para el cobro del billete reclamado y cumplir con lo que se le informó en la Lotería; así como al recurrir oportunamente al Tribunal. Mediante dicha sentencia, el foro de instancia ordenó a la Lotería efectuar el pago al demandante de las fracciones reclamadas. Hacienda solicitó la reconsideración del dictamen referido, sin éxito.

Inconforme con ese dictamen, el Procurador General, en representación del Departamento de Hacienda, recurrió al Tribunal de Circuito de Apelaciones. Por su parte, Rivera Rodríguez se opuso al recurso apelativo interpuesto. El 14 de enero de 1998, el Tribunal de Circuito dictó una sentencia mediante la cual confirmó la del Tribunal de Primera Instancia.

Inconforme con el dictamen referido, el 2 de marzo de 1998, el Procurador General recurrió ante nos mediante una petición de certiorari. Señaló como único error que el Tribunal de Circuito de Apelaciones había incidido al confirmar una sentencia que sumariamente decretó el pago de un billete de la Lotería a pesar de que en el trámite de su reclamo no se habían observado las normas estatutarias y reglamentarias aplicables. Mediante resolución del 12 de mayo de 1998 denegamos el recurso aludido. Oportunamente, el Procurador General solicitó la reconsideración de nuestro dictamen. El 19 de junio, reconsideramos y le concedimos a la parte demandante-recurrida el término de treinta (30) días para que compareciera y mostrara causa, si alguna tuviere, por la cual no debía devolverse el caso al Tribunal de

---

[5] En su "Moción interesando Archivo por Desistimiento", Ocaña Martínez señaló esencialmente que frente a la reclamación de Rivera Rodríguez no tenía posibilidad alguna de prevalecer, por lo que desistía de su causa de acción.

Primera Instancia, para la celebración de una vista en su fondo. La parte demandante-recurrida ha contestado nuestro requerimiento, por lo que procedemos a resolver según lo intimado.

## II

En el caso de autos, el Procurador General nos plantea por un lado que el Tribunal de Circuito de Apelaciones erró al confirmar al foro de instancia en una sentencia que sumariamente decretó el pago de unas fracciones de un billete de la lotería alegadamente extraviado, a pesar de que en el trámite de su reclamo no se observaron las normas estatutarias y reglamentarias aplicables. No tiene razón, en lo que respecta a esta parte de su planteamiento. Veamos.

La Ley mediante la cual se crea la Lotería de Puerto Rico (en adelante, Ley de la Lotería), Ley Núm. 465 del 15 de mayo de 1947, según enmendada, 15 L.P.R.A. secs. 111 et seq., regula lo concerniente al juego de billetes de la lotería en Puerto Rico y a las relaciones jurídicas entre los jugadores de billetes y el gobierno. Véase, <u>Mojica v. Román Rodríguez</u>, <u>supra</u>. Específicamente, regula el procedimiento administrativo que los jugadores deben seguir en casos de billetes de la lotería extraviados o destruidos. Sobre este particular, el Artículo 10 de la ley referida dispone en lo pertinente que:

> [c]ualquier persona a quien se le extravíe, destruyan en cualquier forma o le sean apropiados ilegalmente o robados billetes o fracciones de billetes de la lotería, que desee establecer en su día una reclamación para en caso de que dichos billetes resulten premiados, deberán radicar ante el Director del Negociado de la Lotería o enviar por correo certificado una declaración jurada no menos de veinticuatro (24) horas **antes de la fecha en que había de celebrarse el sorteo a que correspondan los billetes o fracciones**. ... Se hará constar en dicha declaración jurada el hecho de la pérdida, destrucción o apropiación ilegal o robo de los billetes o fracciones y las circunstancias envueltas en la misma. ... En este caso, los fondos correspondientes o los premios de billetes o fracciones de billetes en controversia permanecerán en el "Fondo de la Lotería" hasta tanto se adjudique el derecho al cobro de los mismos. Si transcurrido el término de seis (6) meses que concede [el Art. 12] de este título para el cobro de billetes premiados aparecieren pendientes de pago el billete o las fracciones de billete a que se refiere la declaración jurada antes mencionada, y no [hubiere otro reclamante], el Director del Negociado de la

> Lotería procederá a hacer el pago del premio que corresponda a la persona que suscribe la declaración jurada. (Enfasis suplido.)

15 L.P.R.A. sec. 120. Véanse además, el Artículo 56 del Reglamento para la Administración y Funcionamiento de la Lotería de Puerto Rico (en adelante, Reglamento), aprobado el 31 de marzo de 1971, según enmendado; y González, etc. v. Coop. Ahorro Crédito, etc., 122 D.P.R. 1, 24-25 (1988).

Nótese que la Ley de la Lotería, supra, sólo contempla que se reclame el pago de billetes extraviados o de sus fracciones **antes de celebrarse un sorteo**. La naturaleza misma del procedimiento administrativo antes descrito lo excluye de su aplicación al caso de autos en vista de que alegadamente el demandante-recurrido no se percató de la ausencia de sus supuestas fracciones del billete premiado, aquí en cuestión, hasta después de realizado el sorteo en el cual su alegado billete resultó agraciado. Dicha legislación no contempla reclamación alguna posterior al sorteo.

Ahora bien, en Mojica v. Román Rodríguez, supra, nos encaramos por primera vez a una situación parecida a la del caso de autos, en la cual un "jugador" de la Lotería alegadamente descubrió la perdida de sus fracciones de un billete premiado **despúes** del sorteo. Reconocimos entonces que el Artículo 10 referido sólo aplicaba a casos en los cuales la perdida del billete se descubrió **antes** del sorteo. Por ello, fue menester pautar en dicho caso unas normas para regir la situación no atendida en la Ley de la Lotería. De manera muy breve dispusimos en Mojica v. Román Rodríguez, supra, que cuando el "jugador" se percata de la pérdida de sus billetes de lotería premiados **con posterioridad a la celebración del sorteo correspondiente**, éste debe **notificar** de ello al Director de la Lotería "con una orden expedida por un tribunal competente" prohibiéndole al Director de esa agencia pagar al portador

las fracciones del billete en cuestión.[6] Aunque no abundamos sobre ello allí, es evidente que el propósito que perseguimos, con nuestro breve dictamen sobre la notificación a la Lotería de una orden judicial para paralizar el pago del billete extraviado, era evitar que un tercero portador de dicho billete pudiese cobrarlo a pesar de no ser el dueño real de éste. Como el Artículo 12 de la Ley de la Lotería dispone que "los billetes de la Lotería se consideraran valores al portador",[7] teníamos que establecer un mecanismo de notificación fidedigna sobre el hecho de la pérdida de los billetes, para así proteger al dueño a quien los billetes se le habían extraviado, y lo descubría después del sorteo, de la posibilidad de que un tercero los cobrase sin ser su dueño real.

En el caso de autos, el Procurador General sostiene que el demandante-recurrido incumplió con la norma de Mojica v. Román Rodríguez, supra, que requiere procurar una orden judicial prohibiéndo el pago de los billetes reclamados. Ello es cierto. Rivera Rodríguez no solicitó del foro de instancia la orden referida. Aunque en su demanda Rivera Rodríguez hizo una solicitud al tribunal para que se ordenara al Director de la Lotería no honrar el pago de las fracciones del billete en cuestión, tal solicitud como parte de sus alegaciones no era suficiente para procurar dicha orden debidamente. Esta tenía que ser solicitada mediante una moción aparte, independiente de la demanda, conforme a la práctica firmemente aceptada en nuestra jurisdicción. La mera solicitud de dicha orden como una alegación más de la demanda no conduce al examen judicial expedito que la orden aludida requiere.

---

[6] En Mojica v. Román Rodríguez, supra, sostuvimos además, que se puede incoar una acción reivindicatoria contra quien, sin ser el dueño, posee el billete, lo presenta al cobro en la Lotería, y obtiene su pago.

[7] En lo pertinente, dispone el Artículo 12 referido, 15 L.P.R.A. sec. 122, que "...los billetes de la Lotería se consideraran valores al portador, por lo que no se reconocerá dueño de un billete premiado a otra persona que aquella que lo posea y lo presentare al cobro. El derecho al cobro de premios caducará a los seis (6) meses contados desde el día siguiente al en que se verifique el sorteo a que correspondan. Pasado este plazo el Gobierno de Puerto Rico quedará libre de toda responsabilidad."

Sin embargo, la referida omisión de Rivera Rodríguez respecto a la orden judicial en cuestión no tiene el alcance que alega el Procurador General. Según señaláramos antes, el propósito que dicha orden persigue es evitar que el Director de la Lotería pague unos billetes a un tercero portador de ellos que no es el dueño real de éstos. Se trata sólo de una medida cautelar dirigida a salvaguardar la jurisdicción del foro judicial para dilucidar la acción que incoa la persona que reclama fundadamente ser el verdadero titular de los billetes en cuestión. La omisión por un reclamante como Rivera Rodríguez, al no procurar debidamente la orden judicial referida, sólo significa que éste se expone al riesgo de que el Director de la Lotería pague los billetes al tercero portador mientras se dilucida la acción del reclamante, la cual se tornaría académica entonces.

Del expediente del caso de autos surge que la orden de paralización de pago contra la Lotera no era necesaria aquí. La salvaguarda que dicha orden judicial proveería no hubiese surtido efecto alguno en este caso toda vez que las veinte (20) fracciones correspondientes al billete premiado reclamadas por el demandante-recurrido han estado y aún están pendientes de cobro. No le han sido pagados a ningún tercero portador de dichas fracciones.

En vista de que la orden judicial de paralización en el caso de autos no ha sido necesaria, resolvemos que la causa de acción de Rivera Rodríguez no puede desestimarse por la razón alegada por el Procurador General de que el demandante recurrido no cumplió con el trámite pertinente. Con esto no queremos anticipar que el demandante debe prevalecer finalmente en el caso de autos, sino sólo establecer que no se puede desestimar razonablemente la reclamación de Rivera Rodríguez sólo por no haber solicitado éste la orden judicial de paralización en cuestión, que no era de carácter jurisdiccional ni constituye elemento esencial de este tipo de causa de acción sino sólo una medida para salvaguardar la jurisdicción del tribunal.

Procede examinar ahora si el caso de autos podía resolverse por la vía sumaria.

## III

Debemos determinar si procede o no que en casos como el de autos se utilice el mecanismo procesal de la sentencia sumaria. En particular, con arreglo a los documentos que obran en el expediente, nos toca decidir si los tribunales recurridos erraron al resolver que no existía controversia real y sustancial alguna sobre los hechos materiales del caso que impidiera dictar sentencia sumaria a favor del demandante-recurrido.

Reiteradamente hemos señalado que la sentencia sumaria debe dictarse solamente en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. Piñero v. A.A.A., Op. del 23 de octubre de 1998, 146 D.P.R. ____ (1998), 98 JTS 140, a la pág. 216; Metrop. de Préstamos v. López de Victoria, Op. de Conformidad del 1 de noviembre de 1996, 141 D.P.R. ____ (1996), 96 JTS 138, a la pág. 259; Roth v. Lugo, 87 D.P.R. 386, 397 (1963); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990).

Si existe **alguna duda** sobre la existencia de algún hecho material, **no procede dictar sentencia sumaria**. Cuadrado Lugo v. Santiago Rodríguez, supra, a la pág. 280; Corp. Presiding Bishop CJC of LDS v. Purcell, supra, a las págs. 720-21; Valcourt Questell v. Tribunal Superior, supra, a la pág. 832; Roth v. Lugo, supra. Como es sabido, **el procedimiento sumario no permite que el tribunal dirima cuestiones de credibilidad.** PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 781 (1992).

En el sano ejercicio de su discreción, los tribunales no deben resolver sumariamente casos complejos o **casos en los cuales están presentes cuestiones de interés público**. PFZ Props., Inc. v. Gen. Acc.

Ins. Co., <u>supra</u>, a la pág. 125; <u>Corp. Presiding Bishop CJC of LDS v. Purcell</u>, <u>supra</u>, a la pág. 723.

En múltiples ocasiones hemos resuelto que no es aconsejable utilizar el mecanismo procesal de sentencia sumaria en determinados tipos de casos en los cuales su fiel adjudicación requiere un análisis detenido y cuidadoso de los hechos. Se trata de situaciones donde los elementos fácticos juegan un papel esencial en la decisión judicial a tomarse, por lo que procede la celebración de una vista evidenciaria para depurarlos. Véanse, <u>Casto Soto v. Hotel Caribe Hilton</u>, Op. del 17 de octubre de 1994, 137 D.P.R. ____ (1994), 94 J.T.S. 128; <u>Rodríguez Meléndez v. Sup. Amigo, Inc.</u>, 126 D.P.R. 117, 135 (1990).

Hay litigios y controversias que por su naturaleza no deben resolverse mediante sentencia sumaria, porque **difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de documentos. Elías y otros v. Chenet y otros**, Op. del 16 de febrero de 1999, 147 D.P.R. ____ (1999), 99 JTS 11, a las págs. 555-56; <u>Piñero v. A.A.A.</u>, <u>supra</u>, a la pág. 216. Así ocurre en controversias como la del presente caso, centradas en elementos subjetivos y en las que **el factor de credibilidad juega un papel esencial**, si no decisivo, para llegar a la verdad, y donde un **litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo**. <u>Id</u>.; <u>Casto Soto v. Hotel Caribe Hilton</u>, <u>supra</u>, a la pág. 311; <u>Audiovisual Lang. v. Sist. Est. Natal Hnos.</u>, <u>supra</u>, a la pág. 401; <u>Méndez Arocho v. El Vocero de P.R.</u>, <u>supra</u>; <u>Cuadrado Lugo v. Santiago Rodríguez</u>, <u>supra</u>, a la pág. 279; <u>García López v. Méndez García</u>, 88 D.P.R. 363, 380 (1963).

El Procurador General nos ha planteado que este caso no podía resolverse mediante sentencia sumaria debido a las múltiples interrogantes que existían con respecto a la adquisición de las fracciones del billete en controversia y a la alegada pérdida o destrucción de éstas. Luego de haber examinado detenidamente la totalidad de los autos y conforme a las conocidas disposiciones sobre la procedencia de la sentencia sumaria discutidas antes, concluímos que

tiene razón. Frente a la ausencia de respuestas claras en el expediente, las interrogantes aludidas sólo pueden dilucidarse en una vista en su fondo luego de escuchar y contrainterrogar no sólo al demandante-recurrido y a las personas que alegadamente declararon recordar haber vendido el billete premiado al demandante-recurrido, sino a las personas que supuestamente se encontraban con él cuando alegadamente compró el billete en controversia. Veamos.

Constan en el expediente del caso de autos sendas declaraciones juradas tanto de la señora Maldonado como del señor Albaladejo Santana, que aluden a un conocimiento específico de la venta realizada por ellos de las fracciones del billete premiado al demandante Rivera Rodríguez. Es evidentemente pertinente indagar más allá de las meras declaraciones juradas aludidas si la precisión de los hechos declarados por la dueña de la agencia y su vendedor se debió a que ambos conocían personalmente a Rivera Rodríguez por su nombre y apellidos con anterioridad a la compra de $10.00 de las fracciones del billete de lotería en controversia o si por el contrario, lo conocieron en ese momento. Nos resulta extraño que unas personas que venden cientos de fracciones de billetes de la Lotería recuerden con tal precisión y a unísono una venta de sólo $10. En otras palabras, es pertinente al recurso ante nos que la dueña de la agencia y su vendedor expliquen cómo pueden afirmar categóricamente y con tanta exactitud el número y la cantidad de las fracciones del billete vendidas específicamente a Rivera Rodríguez. De las declaraciones juradas que obran en autos de la dueña de la agencia en cuestión y de su vendedor no surgen las contestaciones a estas medulares interrogantes. Existe alguna duda sobre estos hechos, que sólo pueden ser aclarados en una vista plenaria.

Por otro lado, como se ha visto, en este caso, Rivera Rodríguez sostuvo, en la alternativa, que sus fracciones del billete en controversia se le perdieron en la casa debido a la construcción que allí se realizaba o que se destruyeron cuando su esposa lavó la camisa o el pantalón en que se encontraban. Existe duda, pues, también sobre

la alegada desaparición o pérdida de las fracciones del billete de la lotería en cuestión. Nótese que el demandante-recurrido alegó no sólo que no se percató de la pérdida hasta después de celebrado el sorteo en cuestión, sino que no ha podido precisar si sus alegadas fracciones del billete premiado se perdieron, o fueron destruidas o en qué circunstancias desaparecieron. Según lo declarado por el propio demandante-recurrido, éste pudo recordar el número del billete aludido y la cantidad exacta que compró; sin embargo, no pudo recordar si el billete fue destruido o fue perdido, ni cómo ocurrió.

Finalmente, no puede inferirse de modo claro y con suficiente certeza de los documentos que obran en autos si Rivera Rodríguez era verdaderamente el dueño y poseedor de las únicas fracciones del billete premiado que no han sido cobradas. Es menester recordar que originalmente en este caso hubo dos reclamantes distintos, que alegaron separadamente ser los dueños de los billetes supuestamente extraviados. Ocaña Martínez, el otro reclamante, adujo que las mismas fracciones del billete en cuestión alegadamente se le extraviaron mientras realizaba diligencias en Orlando. Aunque Ocaña Martínez desistió de su reclamación ante el Tribunal de Primera Instancia y ya no es parte del pleito, su reclamación junto con la del demandante presenta la posibilidad de que existan personas que se dedican a alegar que han extraviado aquellas fracciones de billetes premiados cuyo pago no ha sido efectuado por la Lotería, para solicitar que se les otorgue a ellos esa parte del premio. Esa posibilidad arroja algunas dudas sobre la alegada titularidad del demandante-recurrido que impiden disponer de la controversia ante nos de manera sumaria.

En resumen, pues, resulta que en el caso de autos existen distintas dudas sobre aspectos centrales del caso. Los hechos materiales no están del todo claros en los documentos que obran en autos. No es éste el tipo de caso que se presta para resolverse de modo sumario. "Para que una parte pueda promover exitosamente una sentencia sumaria tiene que establecer hechos que definitivamente le

den la razón". <u>Cuadrado Lugo v. Santiago Rodríguez</u>, <u>supra</u>, a la pág. 283. No existe aquí una certeza suficiente sobre todos los hechos pertinentes a la controversia que es necesaria para que pueda obviarse un juicio en los méritos. La celebración de una vista evidenciaria arrojaría luz sobre la alegada procedencia del derecho del demandante-recurrido, para poder entonces aquilatar con certeza suficiente la responsabilidad del Gobierno de efectuar el pago solicitado. En defensa del interés público, y para proteger al erario, Hacienda debe tener la oportunidad de presentar su propia prueba e impugnar la evidencia del demandante-recurrido que desfile en una vista plenaria. De otra manera, existe el riesgo innegable de que se podría estar efectuando un pago indebido respecto al billete en cuestión.

Resolvemos que los foros recurridos se equivocaron al concederle a la parte demandante-recurrida el remedio solicitado por la vía sumaria.

IV

Por todo lo antes expuesto, procede que se expida el auto de *certiorari*, y que se dejen sin efecto los dictámenes emitidos por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, y que se devuelva el recurso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Osvaldo R. Rivera Rodríguez
    Demandante-Recurrido

       vs.

Departamento De Hacienda
    Demandado-Recurrente
--------------------------------------------------------------
CC-1998-117       Certiorari
Manuel Ocaña Martínez
    Demandante

       vs.

Departamento de Hacienda
    Demandado

SENTENCIA

San Juan, Puerto Rico, a 17 de septiembre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se expide el auto de *certiorari*, y se dejan sin efecto los dictámenes emitidos por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, y se devuelve el recurso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García, no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo