# 2007 DTA 92

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN Y HUMACAO
PANEL V**

MARÍA ESTHER COSME LOZADA Y RAFAEL ANGEL CINTRÓN LOPEZ
Demandantes-Recurridos

v.

UHS OF PUERTO RICO, INC., D/B/A HOSPITAL SAN PABLO; DOCTOR PEDRO L. PARRILLA PADILLA, SU ESPOSA DOÑA EDNA RIVERA RODRÍGUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES POR AMBOS CONSTITUIDA, COMPAÑÍA DE SEGURO SIMED
Demandados-Peticionarios

Núm. KLCE-2006-01259

San Juan, Puerto Rico, a 18 de julio de 2007

Panel especial de verano integrado por su Presidente, el Juez Arbona Lago, el Juez Salas Soler y la Juez Velázquez Cajigas

**TEXTO COMPLETO DE LA RESOLUCIÓN**

<u>Antecedentes</u>

En o para septiembre de 2001, la Sra. María Esther Cosme Lozada (Sra. Cosme) acudió a la consulta médica del Dr. Pedro Parrilla Padilla (Dr. Parrilla), especialista en obstetricia y ginecología. Le aquejaba un dolor pélvico severo y sangrado uterino anormal.

Luego de la evaluación médica, el Dr. Parrilla recomendó practicar una histerectomía total transabdominal con salpingo-ofrectomía bilateral, intervención quirúrgica que se verificó en el Hospital San Pablo de Bayamón (Hospital) el 2 de octubre de 2001. Los hallazgos intraoperatorios fueron cervicitis crónica, leiomiomas y ovarios quístuicos. La Sra. Cosme fue dada de alta el 5 de octubre de 2001.

A menos de 24 horas desde que fue dada de alta del Hospital, el 6 de octubre de 2001, la Sra. Cosme acudió a la sala de urgencias del Hospital presentando abdomen distendido, Hct. 29%, presión arterial de 80/50, pulso de 130 y 38 grados de temperatura. Fue admitida al hospital y se le diagnosticó una hemorragia intra-abdominal, hecho que fue notificado al Dr. Parrilla, quien recomendó una nueva intervención quirúrgica de emergencia (laparotomía) que se practicó ese mismo día. Durante la cirugía se halló un hematoma infectado y sangría en la sábana de la pared vesical, por lo que se practicó un drenaje del hematoma así como un lavado intra-abdominal con Betadine.

Para el 9 de octubre de 2001, la Sra. Cosme presentaba un abdomen distendido, con peristalsis, por lo que se le realizaron una serie de estudios, se suspendió la alimentación por boca y se consultó con el Dr. Edwin González Navedo (Dr. González), cirujano. El Dr. González diagnosticó obstrucción intestinal vs. íleo paralítico y recomendó succión nasogástrica. Al día siguiente, 10 de octubre de 2001, el Dr. González intervino quirúrgicamente a la Sra. Cosme, vía laparotomía.

Luego de esta última cirugía, la Sra. Cosme fue transferida a la Unidad de Cuidado Intensivo y el 25 de octubre de 2001 se le realizó una traqueotomía que le fue descontinuada el 9 de diciembre de 2001. La Sra. Cosme fue dada de alta el 14 de diciembre de 2001.

El 16 de diciembre de 2002, la Sra. Cosme, y su compañero consensual, Sr. Rafael Cintrón López, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) la demanda Civil Núm. DKDP2002-0928, contra UHS of Puerto Rico, Inc. D/B/A Hospital San Pablo y los doctores Parrilla, González, Emilio Pérez De León, Justino Betancourt y Raúl A. Ríos Mollineda, sus esposas y Sociedades Legales de Gananciales (SLG), así como las compañías aseguradoras correspondientes, en reclamo de *quántum* reparador. La parte demandante adujo, en lo aquí pertinente, que los daños sufridos por la Sra. Cosme fueron causados en parte:

*"por técnicas de asepsia y antisepsia de naturaleza deficiente por el personal de la sala de operaciones, incluyendo los cirujanos; **pobres técnicas de desinfección de las salas de operaciones del Hospital San Pablo***

*y por problemas en las salas de operaciones y sala de cuido intensivo relacionados con filtraciones, humedad, defectos en los sistemas de aire acondicionado y contaminación incidental por el personal de las salas de operaciones y de cuidado intensivo resultantes del tránsito de personal entre salas y del tránsito del personal de las exterior (sic) hacia las salas sin tomar las debidas precauciones."* (Ap., pág. 6.) (Énfasis nuestro.)

Luego de varios incidentes procesales innecesario aquí recapitular, el 9 de enero de 2004, la parte demandante solicitó y obtuvo autorización para desistir con perjuicio en cuanto a los codemandados doctores González, Emilio Pérez De León, Justino Betancourt y Raúl A. Ríos Mollineda, sus esposas y respectivas SLG. La acción judicial continuó, por tanto, contra el Hospital, el Dr. Parrilla, su esposa y la SLG por ambos constituida y contra la aseguradora SIMED, siendo enmendada la demanda a tales efectos. (Ap., pág. 38.)

El 14 de enero de 2004, el Hospital presentó alegación responsiva a la demanda enmendada, en la que negó las imputaciones sobre actuaciones negligentes. Específicamente, el Hospital adujo en su defensa que los daños alegados no fueron causados por el *"tratamiento cuidado y el servicio hospitalario"* que brindaron sus empleados a la Sra. Cosme. El Hospital argumentó, además, que la Sra. Cosme era *"paciente privada"* del Dr. Parrilla quien no era empleado del Hospital y sólo contaba con privilegios de uso de las facilidades de la institución hospitalaria, lo que impide que el Hospital responda por los daños que dicho facultativo hubiera causado. (Ap., págs. 58-59.)

Luego de otro trámite, no necesario aquí pormenorizar, el 17 de junio de 2005, el Hospital instó ante el TPI una solicitud para que se dictara sentencia sumaria parcial a su favor. Sostuvo que procedía desestimar sumariamente la reclamación en daños y perjuicios incoada en su contra, toda vez que la parte demandante carecía de prueba pericial para establecer el elemento medular de la negligencia del personal del Hospital y, por ende, el de causalidad.

El 28 de noviembre de 2005, la parte demandante se opuso a la solicitud hecha por el Hospital. Alegó, en síntesis, que de los informes periciales rendidos por sus peritos, doctores Rafael A. Marcano y Soltero Harrington, se podía concluir que los actos u omisiones de los codemandados fueron causa suficiente de los daños sufridos por la Sra. Cosme.

El 12 de abril de 2006, el TPI emitió una Resolución que en lo aquí atinente dispuso como sigue:

*"En el caso de autos, existen los hechos materiales en controversia que hemos enumerado y no permiten que se resuelva por la vía sumaria. En consecuencia, determinamos que es imprescindible la celebración de una vista plenaria para resolver las controversias planteadas. Por tanto, se declara no ha lugar la moción solicitando se dicte sentencia sumaria parcial desestimando la demanda en lo que respecta al codemandado Hospital San Pablo."* (Ap., pág. 139.)

Dicha Resolución fue erróneamente notificada el 21 de abril de 2006, por lo que fue nuevamente notificada el 21 de agosto de 2006. De tal determinación, el 30 de agosto de 2006, el Hospital solicitó reconsideración, siendo rechazada de plano por el foro de primera instancia.

No conforme, el 18 de septiembre de 2006, el Hospital acudió ante este foro vía la Petición de *Certiorari* del epígrafe e imputa a Instancia incidir de la siguiente forma:

*"1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMARIA RADICADA POR LA PARTE DEMANDADA, HOSPITAL SAN PABLO. DECLARANDO ASÍ LA EXISTENCIA DE CONTROVERSIA REAL SUSTANCIAL EN CUANTO A LOS HECHOS ESENCIALES Y MATERIALES DEL CASO, Y AL RELACIONAR DICHA RESPONSABILIDAD CON EL HOSPITAL.*

*2. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE ES NECESARIA LA CELEBRACIÓN DE VISTA PLENARIA PARA EVALUAR LA TOTALIDAD DE LA PRUEBA TESTIFICAL, PERICIAL Y DOCUMENTAL PARA ASÍ ESTAR EN POSICIÓN DE DETERMINAR SI LOS ACTOS DEL CODEMANDADO, HOSPITAL SAN PABLO, SON CONSTITUTIVOS DE NEGLIGENCIA Y/O MALA PRÁCTICA, CUANDO EL PERITO DE NEGLIGENCIA, ANUNCIADO POR LA PARTE DEMANDANTE, ACEPTA EN SU DEPOSICIÓN QUE NO HUBO MALA PRÁCTICA POR PARTE DEL HOSPITAL SAN PABLO EN EL TRATAMIENTO QUE BRINDÓ A LA DEMANDANTE. LAS CONTROVERSIAS ESBOZADAS POR DICHO FORO EN SU RESOLUCIÓN SE RELACIONAN UNICAMENTE CON EL DR. PADILLA Y NO CON EL HOSPITAL SAN PABLO. POR LO QUE DE CONFORMIDAD CON LO ANTES EXPUESTO, PROCEDÍA SE DICTARA SENTENCIA SUMARIA PARCIAL A FAVOR DE DICHA INSTITUCIÓN.*

*3. ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL RECHAZAR DE PLANO NUESTRA MOCION SOLICITANDO RECONSIDERACION EN CUANTO A SOLICITUD DE SENTENCIA SUMARIA PARCIAL."*

(Énfasis y subrayado en el original.)

Mediante Resolución emitida el 10 de octubre de 2006 y notificada el 13 de igual mes y año, otro panel [1] de este foro de apelación intermedia concedió a la parte recurrida término, que no debía exceder el **27 de octubre de 2006**, para exponer respecto a los méritos del *Certiorari*. El término venció, la parte recurrida no compareció ni solicitó prórroga para exponer. Ante ello, el 22 de mayo de 2007, la parte peticionaria, Hospital San Pablo, compareció ante el hermano panel mediante *"Moción Solicitando Remedios"*. Nada consta en autos respecto a tal petición.

El 13 de julio de 2007, el Hospital solicitó **en auxilio de nuestra jurisdicción** que ordenemos la paralización del acto del juicio en su fondo pautado para los días 7 al 9 de agosto de 2007, hasta tanto este Foro resolviera el recurso del epígrafe. Examinada la totalidad de la petición de *Certiorari*, en particular la moción de auxilio, estamos en condición de resolver.

**Exposición y Análisis**

Como se sabe, la sentencia sumaria gobernada por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36, constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes que la regla llama *"materiales"*; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Cruz v. Pep Boys*, 169 DPR ___ (2007), **2007 JTS 8**; *Freire v. Vista Rent*, 169 DPR ___ (2006), **2006 JTS 172**; *Malavé v. Oriental*, 167 DPR ___ (2006), **2006 JTS 72**; *Vera et. al. v. Dr. Bravo et. als.*, 161 DPR ___ (2004), **2004 JTS 40**; *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994). Únicamente se concederá el dictamen sumario cuando la evidencia que se presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio.

Es reiterada la doctrina al efecto de que mediante dicho mecanismo se busca obtener un remedio rápido y eficaz en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre hechos importantes y pertinentes (*"materiales"*) que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.*, 135 DPR 363, 376 (1994).

De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos, para adjudicar credibilidad, precisamente cuando de los documentos no

216

refutados conste que realmente no existen controversias de hechos sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*; *Caquías v. Asoc. Res. Mansiones de Río Piedras*, 134 DPR 181, 216 (1993).

En tal exégesis se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente (*"material"*) como queda dicho, y que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio aunque no sea ésta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A & W Developers S.E.*, 137 DPR 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 720 (1986).

Ante la presencia de conflictos reales y sustanciales respecto a hechos importantes y pertinentes, aun en caso de razonable duda al respecto, el foro debe resolver en contra de quien presentó la sentencia sumaria, pues el trámite de la sentencia sumaria no permite que el tribunal entonces dirima cuestiones de credibilidad sin la celebración de una vista evidenciaria plenaria. *Rivera v. Depto. de Hacienda*, 149 DPR 141 (1999); *Col Ing. Agrim. P.R. v. A.A.A.*, 131 DPR 735, 781-782 (1992). Tal norma busca minimizar el peligro de que un trámite sumario pueda prestarse para despojar a un litigante de su *"día en corte"*, principio elemental del debido procedimiento de ley. *Roig Comercial Bank v. Rosario Cirino*, 126 DPR 613, 617-618 (1990).

Tampoco es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria para resolver **casos complejos o que involucren aspectos de interés público**, *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, a la pág. 914, o aquéllos en que deban sopesarse elementos subjetivos sobre intención, propósitos mentales, **negligencia o factores de credibilidad**. *Elías y otros v. Chenet y otros*, 147 DPR 507 (1999); *Rivera v. Depto. de Hacienda*, *supra*; *Piñero v. A.A.A.*, 146 DPR 890 (1998); *Soto v. Caribe Hilton*, 137 DPR 294 (1994).

El peticionario, Hospital San Pablo, sostiene que el TPI incidió al no desestimar sumariamente la reclamación incoada en su contra. Alega, en síntesis: (1) que las controversias identificadas en la resolución recurrida apuntan únicamente al tratamiento médico brindado por el codemandado, Dr. Parrilla; (2) que la parte demandante carece de prueba pericial para imputar negligencia contra el Hospital, pues de las deposiciones de sus peritos trasciende que éstos exoneran de responsabilidad a la institución hospitalaria y enfocan sus teorías de responsabilidad respecto a dos de los galenos que intervinieron con la Sra. Cosme; y (3) que el Dr. Parrilla no era empleado de Hospital, sino un médico a quien el Hospital había otorgado privilegios para utilizar las facilidades hospitalarias. No debemos extendernos más en la consideración de este asunto.

Primero, si bien es cierto que en las controversias que el hermano foro de instancia enumeró en su resolución, aquí recurrida, no se hace expresión particular contra el Hospital aquí peticionario, ello, de por sí, no significa que no existan hechos importantes y pertinentes (*"materiales"*) en controversia, que tienen que ser dilucidados en Sala, por los cuales el peticionario pudiera resultar responsable ante la parte demandante. Lo anterior cobra mayor importancia ante las alegaciones de *"falta de cuidado a la paciente y las pobres técnicas de desinfección de las salas de operaciones del Hospital San Pablo"* esgrimidas en sus alegaciones por la parte demandante y recogidas por el TPI en la resolución recurrida. (Ap., pág. 132.) La naturaleza de esta clase de alegaciones encierra cuestiones de interés público que merecen una atención detenida por parte del foro judicial por lo que no se favorece que sean dirimidas mediante el vehículo procesal extraordinario de sentencia sumaria. *PFZ Props. v. Gen. Acc. Co.*, *supra*, a la pág. 914.

El Hospital no presenta en su Moción de Sentencia Sumaria dato de hecho establecido en autos, en esta etapa con antelación a la presentación de toda la prueba de la parte demandante, que en forma indubitada permita concluir -- como cuestión de hecho y derecho -- que el Hospital está excluido de toda responsabilidad

frente a la parte demandante.

Aun y cuando podemos detectar que en el informe pericial del Dr. Marcano y en la deposición del Dr. Soltero Harrington, peritos médicos de la parte demandante, éstos no hacen imputaciones específicas de negligencia contra el personal del Hospital en el tratamiento brindado a la Sra. Cosme, lo cierto es que de tales deposiciones no podemos concluir de forma definitoria y segura, como lo requiere el dictamen sumario, que no medió responsabilidad por parte del Hospital. Además, precisa recordar que el destinatario de la prueba pericial es siempre el juez, ante el que se practica dicho medio de prueba. *San Lorenzo Trad., Inc. v. Hernández, supra.* Por lo que le corresponde al foro recurrido aquilatar la prueba presentada, incluso la pericial, e impartirle el valor probatorio que se ajuste tanto a los hechos como al derecho vigente, lo que evidentemente en esta etapa del proceso aún no ha ocurrido.

El hecho de que se haya determinado que el codemandado, Dr. Parrilla, no era empleado del Hospital y únicamente contaba con privilegio para utilizar las facilidades médicas del Hospital, no es suficiente para que el Hospital quede relevado de toda responsabilidad frente a los demandantes. Ante tal circunstancia, el Hospital está llamado a establecer que cumplió cabalmente su obligación de seleccionar y supervisar a los galenos a quienes otorga privilegios, entre ellos, el aquí codemandado Dr. Parrilla, hecho que no ha quedado establecido en autos.

Según lo ya expuesto, la causa del epígrafe presenta controversias de hechos esenciales sobre las cuales el tribunal deberá recibir prueba antes de aquilatar y adjudicar. Por lo tanto, no procede la desestimación sumaria solicitada. No se cometieron los errores levantados, por lo que conforme a los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, no debemos expedir el auto de *Certiorari* solicitado. 4 LPRA XXII-B, R. 40.

## Dictamen

Conforme a lo expuesto, denegamos la expedición del auto de *Certiorari*, así como de la moción en auxilio a nuestra jurisdicción que le acompaña.

Como se sabe, la no expedición de una Petición de auto de *Certiorari*, no prejuzga los méritos de la cuestión planteada, pudiendo ésta ser reproducida nuevamente en futuro trámite. *Núñez Borges v. Pauneto Rivera,* 130 DPR 749, 755-756 (1992); *Pueblo v. Carrión,* 111 DPR 825 (1981).

Notifíquese de inmediato por teléfono o fax, así como por correo ordinario.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones