# 2006 DTA 34

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE BAYAMÓN
### PANEL VII

EDWIN F. CARMONA GONZALEZ EN REPRESENTACIÓN DE LA SUCESIÓN DE PEDRO CARMONA Y MARÍA DEL C. GONZÁLEZ COMPUESTA POR ELSA R. ELLIOT, BETZAIDA LIZETTE, PEDRO L., CARMEN M. CELEDONIO, ADA I., TODOS DE APELLIDOS CARMONA GONZÁLEZ
Demandantes-Recurridos

v.

SRA. RENEIRA CARMONA CANDELARIO, SR. LUIS ANTOMATEI CARMONA Y LA SOC. LEGAL DE

GANANCIALES COMPUESTA ENTRE ESTE Y FULANA DE TAL
Demandados- Recurrentes

SRA. ISABEL GELPI GONZÁLEZ
Demandada-Involuntaria

Núm. KLAN-2005-01248

San Juan, Puerto Rico, a 12 de enero de 2006

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En la causa del epígrafe, los apelantes, Sra. Reneira Carmona Candelario y Sr. Luis Antomattei Carmona, solicitan que revoquemos la Sentencia Sumaria emitida el 12 de enero de 2005 y archivada en autos copia de su notificación el 2 de marzo de 2005, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), en la que se declaró nulo el dominio inscrito en virtud de la resolución dictada el 6 de mayo de 1996 sobre petición de Expediente de Dominio (DJV 1995-0189) y se ordenó la eliminación de la referida inscripción del Registro de la Propiedad. Además, se declaró no ha lugar la causa de acción en daños y perjuicios incoada en contra de los aquí apelantes.

**Hechos**

Para el año 1920, don Celedonio Carmona Rosario (don Celedonio) y su esposa, doña Petrona Candelario Torres (doña Petrona), eran los dueños en pleno dominio de la parcela sita en el 358 de la Calle Parque (oeste) del Barrio Sabana Seca en el término municipal de Toa Baja, Puerto Rico. Para efectos de esta discusión la

identificamos como finca A, que a su vez colinda con otro predio de terreno, también propiedad de los esposos Carmona-Candelario, que identificamos como finca B.

El Sr. Pedro Carmona Candelario (hijo de don Celedonio y doña Petrona) y su esposa, Sra. María del Carmen González, también poseyeron en vida y por herencia la finca A y en la actualidad sus hijos, aquí apelados, continúan en la referida finca.

Tanto don Celedonio y doña Petrona como su hijo Pedro y la Sra. María del Carmen González fallecieron intestados y sus respectivas sucesiones aún no han sido divididas. ■

Al deceso del Sr. Pedro Carmona (el 9 de octubre de 1988, Ap., Apelación, pág. 6), le sucedió su viuda, Sra. María del Carmen González, y sus hijos, aquí apelados, Edwin Francisco, Elsa Reinera, Elliot, Bedsaida, Lizette, Pedro Luis, Carmen María, Celedonio, Luis Alberto y Ada Ivette, todos de apellido Carmona González (la sucesión Carmona-González). *Id.*, a la pág. 68. Por su parte, el 7 de marzo de 1996 falleció la Sra. María del Carmen González, quedando compuesta su sucesión por los antes mencionados miembros de la sucesión Carmona-González y por su hija, Sra. Isabel Gelpí González, hermana de vínculo sencillo. *Id.*, a la pág. 18.

Así las cosas, el 30 de noviembre de 1993 la Sra. Reneira Carmona Candelario (Sra. Reneira Carmona) –hija de don Celedonio y doña Petrona- adquirió de su sobrino, el Sr. Luis Antomattei Carmona (Sr. Antomattei) la antes referida finca B, mediante la Escritura de Compraventa Número 98 otorgada ante el Notario Pedro Acevedo Rodríguez. Por su parte, el Sr. Antomattei señaló haber antes comprado a don Celedonio y doña Petrona la finca B en 1960 mediante contrato verbal.

El 3 de noviembre de 1995, la Sra. Reneira Carmona instó trámite de Información de Dominio en la causa DJV1995-0189 ante el TPI. Describió la finca como:

*"---URBANA: Solar radicado en el Barrio Sabana Seca del término municipal de Toa Baja, Puerto Rico, con una cabida superficial de CUATROCIENTOS TREINTA Y NUEVE PUNTO SETESIENTOS SIETE METROS CUADRADOS (439.707 M.C.), equivalentes a CERO PUNTO MIL CIENTO DIEZ Y NUEVE CUERDA (0.1119 CDA.); en lindes por el NORTE, en trece punto ochocientos cuarenta y ocho metros (13.848 m.), con Don Luis Antomattei Carmona;* **por el SUR, en diez y ocho punto quinientos metros (18.500 m.), con la Sucesión Carmona y servidumbre de paso;** *por el ESTE, en veintisiete punto ochocientos veinte metros (27.820 m.), con Don Antonio Antomattei Carmona; y por el OESTE, en veintisiete punto trescientos diez y seis metros (27.316 m.), con Don Gregorio Ortiz Santos. En este solar enclava una casa de cemento y zinc, dedicada a vivienda, de dos cuartos dormitorios, sala, comedor, cocina y baño."* (Ap., Apelación, pág. 76.) (Énfasis nuestro.)

Celebrada la vista evidenciaria, el hermano foro de instancia acogió la petición y mediante Resolución del 6 de mayo de 1996, declaró justificado el dominio a favor de la Sra. Reneira Carmona y ordenó la inmatriculación de la finca en el Registro de la Propiedad, sección segunda de Bayamón.

El 13 de septiembre de 1996, el Sr. Antomattei advino dueño nuevamente de la finca B al adquirirla de manos de su tía, Sra. Reneira Carmona, mediante la Escritura de Compraventa Número 36 otorgada ante el Notario Pedro Acevedo Rodríguez.

Para el año 1997, el Sr. Antomattei presentó la querella número 97-046 sobre Estado Provisional de Derecho, Ley Núm. 140 del 23 de julio de 1974, según enmendada, contra los aquí co-apelados, Sr. Elliot Carmona y Sra. Isabel Gelpí. Alegó que se le estaba interfiriendo el paso al que tiene derecho a través de la servidumbre de paso que sirve a su propiedad (finca B) y que discurre por la finca de los querellados (finca A) como predio sirviente. El 29 de agosto de 1997, el TPI emitió resolución a favor del Sr. Antomattei ordenando a los querellados permitir el uso de la servidumbre de paso antes referida.

El 16 de septiembre de 1997, los miembros de la Sucesión Carmona-González presentaron ante el TPI una demanda (DAC1997-0863) sobre dominio contradictorio y negación de servidumbre contra la Sra. Reneira Carmona y el Sr. Antomattei. Alegaron en síntesis: (a) que la finca A fue donada verbalmente a sus padres (Sr. Pedro Carmona y Sra. María del Carmen González) por sus abuelos (don Celedonio y doña Petrona); (b) que llevan poseyendo la finca A por más de 40 años y que la misma colinda con la finca B, que fue objeto de un trámite de Informe de Dominio el cual nunca se les notificó y mediante el cual se reconoció una servidumbre de paso que afecta su propiedad; (c) que no fue sino hasta el trámite de la querella sobre estado provisional de derecho que conocieron de la resolución judicial emitida sobre el expediente de dominio. Asimismo, negaron la existencia de servidumbre de paso alguna que afecte su propiedad y sirva al predio de los demandados, aquí apelantes.

Oportunamente, los demandados presentaron alegación responsiva, negando las alegaciones esenciales de la demanda. Expusieron como defensas afirmativas, entre otras, que la demanda deja de acumular partes indispensables; que el Sr. Antomattei es un tercero registral por lo que no procede la alegación de nulidad de la petición de dominio y que la co-demandada, Sra. Reneira Carmona cumplió con todos los requisitos en la tramitación del Expediente de Dominio.

Tras varios trámites procesales, que incluyeron la celebración de una Inspección Ocular de las fincas en controversia, el 29 de octubre de 2000, los demandantes presentaron ante el TPI solicitud de sentencia sumaria en la que básicamente reiteraron lo alegado en la demanda a los efectos de que la Sra. Reneira Carmona no notificó a todos los miembros de la Sucesión Carmona-González sobre el trámite de Expediente de Dominio, por lo que reclamaron del TPI declarara la nulidad de dicho procedimiento. Acompañaron su solicitud, entre otros documentos, con declaraciones juradas tomadas a los colindantes de la finca B objeto del Informe de Dominio, señalando que no fueron notificados de dicho procedimiento. (Véase, Anejos 4-12, Ap., Oposición, págs. 8-30.)

El 13 de noviembre de 2000, los demandados instaron réplica a la solicitud referida y solicitaron se dictara sentencia sumaria a su favor, desestimando la demanda en su contra. Alegaron esencialmente que se cumplió con el requisito de notificación en la petición del Expediente de Dominio, pues se les notificó a los demandantes a través del Sr. Calixto Carmona Candelario. Argumentaron, en la alternativa, que los demandantes quedaron debidamente notificados mediante los edictos que fueron publicados con el propósito de que las personas ignoradas que pudieran verse afectadas por el procedimiento comparecieran al mismo.

Así las cosas, el 13 de marzo de 2001, los demandantes solicitaron y obtuvieron permiso para enmendar la demanda a los fines de incluir como demandada involuntaria a su hermana de vínculo sencillo, Sra. Isabel Gelpí González y reclamar de los demandados una suma de $25,000 en daños y perjuicios.

El 12 de enero de 2005, notificada el 2 de marzo de 2005, el TPI falló a favor de los demandantes y declaró con lugar la solicitud de sentencia sumaria presentada por éstos. Determinó que los aquí demandantes no fueron notificados de la presentación judicial y del Informe de Expediente de Dominio DJV 1995-0189, por lo que declaró nulo el dominio inscrito en virtud de la resolución dictada el 6 de mayo de 1996, en dicho expediente. Ordenó la eliminación de la referida inscripción del Registro de la Propiedad de Puerto Rico, segunda sección de Bayamón y declaró no ha lugar la causa de acción en daños y perjuicios.

El 11 de marzo de 2005, los demandados solicitaron al Tribunal la reconsideración de la sentencia, determinaciones de hechos y conclusiones de derecho adicionales. Oportunamente, la parte demandante replicó. Atendida la solicitud, el ilustrado foro de instancia emitió Resolución el 7 de septiembre de 2005 en la que declaró no ha lugar la antedicha moción.

No conformes, los apelantes recurren vía la causa del epígrafe e imputan al foro de instancia incidir de la siguiente forma:

*"1. Erró el Tribunal de Primera Instancia al disponer de la controversia en virtud de una Sentencia Sumaria, impidiendo a los demandados-recurrentes tener su día en corte y presentar la totalidad de la prueba en su poder, tal acción tuvo el efecto directo de evitar que el caso fuera justamente considerado, ya que le impidió al Tribunal la posibilidad de maximizar su capacidad de ponderar todos los elementos de prueba posible, que hubiesen estado presentes de forma singular en su justo día en corte. Entendemos que la controversia planteada en este caso ameritaba se garantizara a las partes su día en corte con propósito de dirimir de forma más justa y apropiada el caso en cuestión.*

*2. Cometió grave error el Tribunal de primera Instancia y abusó de su discreción al dictar una Sentencia Sumariamente, luego de estar sometidas Mociones en tal solicitud por ambos litigantes y resolver una controversia mediante dicho vehículo procesal, luego de transcurridos m[á]s de tres años de sometidas tales solicitudes, lo cual es improcedente y viola el debido procedimiento de Ley que tiene derecho todo ciudadano a que su caso sea adjudicado en sus méritos mediante un juicio plenario.*

*3. Erró el Tribunal de Primera Instancia al dictar Sentencia Sumaria y dejar sin efecto un procedimiento previo sobre Petición de Dominio en el que se cumplieron todos los requisitos de ley en su tramitación y obtención, habiéndose, como consecuencia de ello, emitido en la sentencia dictada para la anulación de la inmatriculación de un asiento Registral, sin razón o fundamento para ello causando un perjuicio irreparable, todo ello sin apoyo de evidencia alguna que sustentara válidamente tal determinación.*

*4. Cometió un grave error el Tribunal de Instancia al no considerar la validez del procedimiento de Dominio tramitado ante un Tribunal de igual jerarquía. Dicho foro tuvo la oportunidad de ponderar toda la evidencia presentada para emitir una sentencia válida que sirvió como base para la inscripción de un inmueble.*

*5. Cometió grave error el Tribunal de Instancia al dictar Sentencia y disponer de una controversia, sin estar presentes todas las partes con interés, ni haberse acumulado partes indispensables en el pleito.*

*6. Incidió en un grave y craso error el Tribunal de Instancia al decidir y emitir Sentencia Sumaria a favor de los demandantes-apelados, en un caso en que éstos reclaman que parte del predio de los demandados-apelantes les pertenece, (Acción de Reivindicación), conforme se alega en la demanda, cual no podía prosperar, ante la ausencia total de prueba, conforme a lo establecido en el caso normativo de Arce v. Díaz, 77 D.P.R. 262 (1954) [.]"* (Énfasis y subrayado en el original.)

*7. Cometió grave error el Tribunal al dictar una Sentencia Sumaria sin que los demandantes recurridos presentaran evidencia que permitiera identificar el predio a reivindicarse, especificando su situación, título, linderos, cabida, cual requerían irremediablemente un juicio y demostrar que el predio reclamado es aquel a que se refieren los documentos, títulos y demás medios de prueba sobre los cuales el demandante funde su acción, además de presentar y probar el justo título de dominio.*

*8. Cometió grave error el Tribunal de Instancia al no aplicar en su disposición del caso, la protección de Tercero Registral a la cual tiene Derecho el co-demandado, Luis Antomattei Carmona, por haber adquirido de la persona que ap[a]rec[í]a como dueña en el Registro de la Propiedad."*

Sometida la apelación mediante la presentación de los alegatos de las partes, procedemos a resolver.

## Exposición y Análisis

Por estar íntimamente relacionados, discutiremos los señalamientos de error conjuntamente.

## I

Como se sabe, la sentencia sumaria gobernada por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36, constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes que la regla llama *"materiales"*; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994). Únicamente se concederá el dictamen sumario cuando la evidencia que se presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio.

Es reiterada la doctrina al efecto de que mediante dicho mecanismo se busca obtener un remedio rápido y eficaz en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre hechos importantes y pertinentes (*"materiales"*) que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.,* 135 DPR 363, 376 (1994). De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, ▮ la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos, para adjudicar credibilidad, precisamente cuando de los documentos no refutados conste que realmente no existen controversias de hechos sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Caquías v. Asoc. Res. Mansiones de Río Piedras,* 134 DPR 181, 216 (1993); *Consejo Tit. Cond. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 548 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).

En tal exégesis, se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente (*"material"*) como queda dicho, y que también surja que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio aunque no sea esta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A & W Developers S.E.,* 137 DPR 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720 (1986).

Ante la presencia de conflictos reales y sustanciales respecto a hechos importantes y pertinentes, **aun en caso de razonable duda al respecto**, el foro debe siempre resolver en contra de quien presentó la sentencia sumaria, pues el trámite de la sentencia sumaria no permite que el tribunal en tal caso dirima cuestiones de credibilidad sin la celebración de una vista evidenciaria plenaria. *Rivera v. Depto. de Hacienda,* 149 DPR 141 (1999); *Col Ing. Agrim. P.R. v. A.A.A.,* 131 DPR 735, 781-782 (1992). Tal norma busca minimizar el peligro de que un trámite sumario pueda prestarse para despojar a un litigante de su *"día en corte"*, principio elemental del debido procedimiento de ley. *Roig Comercial Bank v. Rosario Cirino,* 126 DPR 613, 617-618 (1990). Tampoco es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria para resolver casos en que deban sopesarse elementos subjetivos sobre intención, propósitos mentales o factores de credibilidad. *Elías y otros v. Chenet y otros,* 147 DPR 507 (1999); *Rivera v. Depto. de Hacienda, supra.*

## II

El caso de marras gira en torno al cumplimiento de los requisitos del procedimiento de Expediente de Dominio, en particular el requisito de notificación a los colindantes del inmueble descrito en el expediente.

Como se sabe, el Informativo de Dominio es un procedimiento especial de jurisdicción voluntaria establecido en la Ley Hipotecaria de 1979, según enmendada, 30 LPRA secs. 2762-2770, cuyo único dictamen obtenible es el de ordenar la inmatriculación de una finca en el Registro de la Propiedad correspondiente, a favor de su titular dominical, con el objetivo de concordar la realidad registral a la extraregistral.

Reiteradamente se ha señalado que los requisitos establecidos por la Ley Hipotecaria, *supra,* para la

tramitación de un expediente de dominio son esenciales y de cumplimiento estricto por el alto interés público que encierran. *Nieves Osorio, Ex Parte*, 127 DPR 907 (1991); *Álvarez v. Registrador*, 84 DPR 229, 230 (1961). En lo aquí relevante se requiere que el promovente del expediente de dominio **notifique personalmente o por correo certificado de su escrito a las personas que estén en la posesión de las fincas colindantes.** Tal notificación brindará oportunidad a las partes concernidas de comparecer y velar por sus derechos.

Los apelantes argumentan que se cumplieron cabalmente todos los requisitos del expediente de dominio, pues los miembros de la sucesión Carmona-González quedaron adecuadamente notificados de dicho trámite mediante la citación que se cursó al Sr. Calixto Carmona Candelario (tío de los demandantes), quien a su vez les notificó personalmente a los demandantes sobre el procedimiento. En la alternativa, aducen que los demandantes quedaron debidamente notificados mediante los edictos que fueron publicados. No les asiste la razón. Nos explicamos.

Surge del récord que el Sr. Calixto Carmona Candelario es miembro de la sucesión de don Celedonio y doña Petrona y **no así de la sucesión Carmona-González** que en la actualidad son los que se encuentran poseyendo el inmueble que colinda con el predio objeto del expediente. Procedía, por tanto, que la promovente del informativo de dominio, Sra. Reneira Carmona, cursara una notificación del trámite a todos los miembros de la sucesión Carmona-González, expresando los nombres de los miembros que la componen, pues es ampliamente conocido que en esta jurisdicción la sucesión hereditaria, aunque se denomine comúnmente como *"Sucesión Pérez"* etc., no existe como persona jurídica, por lo que en tal situación siempre se ha de atender a la persona o al conjunto de personas que la compone, ya que sólo éste o éstos son los que cuentan con la capacidad de actuar. *Pino Development Corp. v. Registrador,* 133 DPR 373, 388 (1993).

Por otro lado, no podemos coincidir con el argumento de los apelantes, en cuanto a que la sucesión Carmona-González quedó debidamente notificada a través de los edictos que fueron publicados, pues la propia Ley Hipotecaria, *supra*, establece que dicho mecanismo de notificación se utilizará para proveer oportunidad de comparecer en el procedimiento a aquellas personas que pudiesen ver afectados sus derechos, **pero que son desconocidas para el promovente**. En este caso, la promovente del expediente de dominio conocía del paradero de sus sobrinos (demandantes) por lo que no puede descansar en la publicación de los edictos para establecer el cumplimiento con el requisito de notificación de colindantes.

Como vemos, las circunstancias en que se tramitó la petición de expediente de dominio demuestran que a los miembros de la Sucesión Carmona-González no se les brindó una oportunidad procesal adecuada para exponer ante el foro de Primera Instancia, respecto al asunto del dominio reclamado por la Sra. Reneira Carmona. Es decir, se les privó de su derecho a la notificación requerida del procedimiento, así como de su derecho a ser oído y presentar prueba, de así interesarlo. Todo ello es parte del ordenamiento sustantivo y procesal dentro del trámite de expediente de dominio, por lo que -- como se sabe --, una vez establecida la ley, queda obligada su implementación uniforme al amparo del debido trámite de ley, garantizado en las enmiendas V y XIV de la Constitución de E.U. y la sección 7 del Art. II de la Constitución del E.L.A., lo que se extiende al requisito de notificación adecuada a toda parte interesada en el proceso por disposición de ley. *Asoc. Residentes v. Montebello Dev. Corp.*, 138 DPR 412, 421 (1995).

Es reiterada doctrina en esta jurisdicción que la privación de la libertad o propiedad sin notificación u oportunidad de ser escuchado y exponer conforme a lo estipulado por ley o reglamento, se ha considerado siempre ajena al debido proceso y en ocasiones es fuente de responsabilidad civil. *Fuentes González v. S.L.G., supra*. Por tanto, no podemos aquí avalar una Resolución y Orden de inscripción de dominio, producto de una vista en la cual a unos colindantes, como lo son los aquí apelados, no se les garantizó el debido proceso de ley, según amparado en las Enmiendas V y XIV de la Constitución de los Estados Unidos de América y el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado.

No existen aquí controversias de hechos reales y sustanciales (*"materiales"*) que impidan la disposición

sumaria del asunto. Conforme al principio de economía procesal, procedía resolver por la vía sumaria. No se cometieron los errores señalados.

**Dictamen**

Conforme a lo expuesto, confirmamos el dictamen apelado.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones