ANTONIO BETANCOURT FÚSTER, FRANCISCO F. QUETGLAS ÁLVAREZ Y JUAN ALVARADO ORTIZ, demandantes y recurridos, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Números:* R-72-247,     *Resueltos:* 30 de septiembre de 1975
R-72-159

*Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera,*
*Procurador General Interino, Américo Serra* y *Ruth Tentori,*
*Procuradores Generales Auxiliares,* abogados del recurrente;
*Canales & Ferrer,* abogados de los recurridos Francisco F.
Quetglas Alvarez y Juan Alvarado Ortiz; *Meléndez & Suárez,*
abogados del recurrido Antonio Betancourt Fúster.

PER CURIAM: El 15 de julio de 1960, los aquí recurridos, en unión a once personas, compraron de la Sociedad Agrícola Tomás Rivera Rohena una finca rústica de 352 cuerdas ubicada en el Barrio Pájaros, entre los pueblos de Toa Baja y Bayamón. Los compradores estuvieron representados por Germán Corujo y Carlos Clavel, también miembros del grupo comprador. Según los términos de la compraventa, cada uno de los compradores adquiriría una catorceava parte de la finca en común *pro indiviso.* El precio convenido fue de $400,000, de los cuales los compradores retendrían $149,000 para satisfacer ciertos gravámenes de la finca. Satisfarían $70,000 el día 15 de enero de 1961 y el balance restante en cuatro plazos iguales, durante los cuatro años siguientes, sin intereses durante el primer año, y al 5% de interés durante los tres años restantes. Dichas obligaciones se habrían de cumplir a partir del otorgamiento de la escritura de compraventa. Esta fue otorgada el 4 de agosto de 1960, ante el Notario J. Martín Almodóvar.

Veintiocho días antes del otorgamiento de la escritura, Corujo concedió a Eusebio Gómez Moreno una opción de compra sobre la finca a razón de $1,800 por cuerda. Moreno repre-

sentaba a la International Longshoremen Association, Fund Housing Project (PRSSA), en adelante I.L.A. A tenor con el contrato de opción de 21 de julio de 1960, (¹) los optantes entregarían $20,000 a Corujo en o antes del 26 de julio de 1960, a menos que le entregaran $40,000 el 11 de septiembre, en cuyo caso, la fecha para ejercitar la opción se extendería hasta el día 1ro. de diciembre de 1960. De ejercitar la opción, la I.L.A. vendría obligada a pagar $170,000 el 1ro. de diciembre y el remanente del precio dentro del término de dos años a partir del otorgamiento del contrato de opción. Se dispuso que el balance del precio aplazado devengaría intereses anuales al 7%, desde el día 1ro. de diciembre de 1960, fecha en que se otorgaría la escritura de compraventa.

Según lo dispuesto en el contrato de opción los compradores hicieron los tres pagos mencionados, a saber: el de $20,000, el 21 de julio de 1960, el de $40,000 el 11 de septiembre de 1960 y el de $170,000 el 1ro. de diciembre de 1960. El 23 de febrero de 1961 se otorgó la escritura de compraventa e hipoteca ante el Notario José Aulet. El precio de venta del inmueble fue de $690,300, de los cuales la cantidad de $284,361 fue recibida por los vendedores antes del otorgamiento de la escritura en los tres pagos antes mencionados y en un pago adicional de $54,361.

El Secretario de Hacienda notificó a tres de los vendedores: Antonio Betancourt Fúster, Francisco Quetglas y Juan Alvarado Ortiz deficiencias contributivas para 1960 que surgen de la venta de sus respectivas participaciones en el inmueble. (²)

Los contribuyentes acudieron por separado al Tribunal Superior, Sala de San Juan, alegando que las deficiencias

---

(¹) Hubo un contrato de opción anterior de fecha 13 de julio de 1960, cuya única diferencia con el del 21 de julio era el precio de $1,500 por cuerda, en vez de $1,800 precio convenido finalmente.

(²) Las cantidades envueltas y notificadas como deficiencias contributivas son: al contribuyente Quetglas Alvarez $5,471.35, a Juan Alvarado Ortiz $1,551.18 y a Antonio Betancourt Fúster $11,787.07.

notificadas por el Secretario de Hacienda eran nulas y que la ganancia obtenida en la venta del inmueble debía reputarse una ganancia de capital a largo plazo y tributar como tal. Se basaron en el hecho de haber poseído el inmueble por un período mayor de seis meses. (3) Este período comprendía desde el 4 de agosto de 1960, fecha en que se otorgó la escritura de compraventa entre la Sociedad Agrícola y los catorce compradores, hasta el 23 de febrero de 1961, fecha en que se otorgó la escritura de compraventa entre la entidad representada por Moreno y los catorce comuneros.

El Secretario de Hacienda, por el contrario, alegaba que la venta entre la I.L.A. y los contribuyentes recurridos se realizó el 1ro. de diciembre de 1960, fecha en que se ejercitó la opción de compra y se tomó posesión del inmueble. Por esto el beneficio obtenido por los contribuyentes era una ganancia de capital a corto plazo, habiendo poseído la finca por menos de seis meses.

Por tratarse de una cuestión común de hecho y de derecho el Tribunal Superior, Sala de San Juan, Lucas Serbiá Córdova, J., consolidó los recursos y el 26 de abril de 1972 dictó sentencia declarando con lugar las demandas y anulando las deficiencias notificadas a los contribuyentes. Concluyó que la transacción de compraventa se realizó el 23 de febrero de 1961, cuando se otorgó la escritura de compraventa e hipoteca y que por lo tanto, la ganancia obtenida por los contribuyentes era una a largo plazo.

----

(3) La Ley de Contribuciones sobre Ingresos vigente al momento de llevarse a cabo la transacción definía ganancia de capital a corto plazo: ". . . la ganancia en la venta o permuta de un activo de capital poseído por no más de 6 meses, si y hasta el monto en que dicha ganancia se toma en cuenta al computarse el ingreso bruto." Ganancia de capital a largo plazo "significa la ganancia en la venta o permuta de un activo de capital poseído por más de 6 meses, y hasta el monto en que, dicha ganancia se toma en cuenta al computarse el ingreso bruto." (13 L.P.R.A. sec. 3117)

Inconforme con lo decidido por el Tribunal Superior, el Secretario de Hacienda acude ante nos. Acordamos revisar.

Una vez comprador y vendedor convienen en la cosa objeto del contrato y en el precio, se perfecciona un contrato de compraventa, aunque ni la una ni el otro hayan sido entregados. Art. 1339, Código Civil, 31 L.P.R.A. sec. 3746. *Segarra* v. *Vda. de Lloréns*, 99 D.P.R. 60, 72 (1970); *Vélez* v. *Camacho*, 8 D.P.R. 37, 45 (1905).

Al la I.L.A. entregar el 1ro. de diciembre los $170,000 se perfeccionó el contrato de compraventa. Las partes perfeccionaron la compraventa ya que hubo un convenio sobre la cosa y el precio. Además la prueba estableció claramente que antes del 1ro. de diciembre la entidad compradora había tomado posesión del inmueble al ejercitar ciertos actos de dominio en el mismo, tales como replantar mil metros cuadrados y construir dos casas modelo.

Los vendedores poseyeron el inmueble vendido desde el 4 de agosto de 1960 hasta el 1ro. de diciembre de 1960, fecha en que se llevó a cabo la compraventa, para un total de 3 meses y 25 días. Dicha transacción se traduce para fines contributivos en una ganancia de capital a corto plazo y como tal debe tributar. 13 L.P.R.A. sec. 3117 (a) (2).

Por los fundamentos expuestos, *se revocará la sentencia dictada en los casos del epígrafe en aquella parte de la misma que determinó que la venta realizada era una a largo plazo.*