In the Matter of Ramón HERNÁNDEZ ARVELO & María v. Medina, Debtor–Intervenors.

Hans Lopez STUBBE, Trustee for the Estate of Debtors, Plaintiff,

v.

Ernesto RIVERA ROURA, Irma Martinez Toro, their Conjugal Partnership; U.S.A. (Farmers Home Administration), Defendants.

Bankruptcy No. 85–00578(SEK).
Adv No. 85–0318.

United States Bankruptcy Court,
D. Puerto Rico.

April 15, 1991.

Alberto Lozada–Colón, Mayaguez, P.R., for defendant Rivera–Roura.

Sergio Ramírez de Arellano, Hato Rey, P.R., for Trustee.

José Pizarro, Asst. U.S. Atty., Hato Rey, P.R., for codefendant Farmers Home.

## OPINION AND ORDER

SARA E. de JESUS, Bankruptcy Judge.

The question in this proceeding is whether the Trustee can avoid Debtor's prebankruptcy sale of his milk quota to Mr. Ernesto Rivera Roura pursuant to the "strong arm" clause of the U.S. Bankruptcy Code, 11 U.S.C. Section 544(a), because under applicable state law delivery was insufficient to pass title.

The production and sale of milk in Puerto Rico has been regulated since 1979, by Law No. 34 approved on June 11, 1957, as amended, 5 Laws of P.R.Ann., Sections 1092–1125, and by the various rules and regulations approved pursuant to this Act. Section 2 of the Act empowers the Secretary of the Department of Agriculture, with the approval of the Governor, to appoint a Milk Industry Regulation Administrator.[1] (The "Administrator"). This Administrator "shall have the power to investigate and regulate all phases of the milk industry ... including production, processing [and] ... sale" of milk and its by-products.[2] Mr. Fullana was appointed the Milk Industry Regulation Administrator on Feb-

---

**1.** 5 Laws of P.R.Ann. Section 1093.

**2.** 5 Laws of P.R.Ann. Section 1096(a).

ruary 6, 1985. His credible and unrefuted testimony shows:

1. Any person that wishes to operate a dairy farm in P.R. has to submit an application for a license to the "Office of Milk Regulation" Administrator.

2. In order to obtain a license the person must meet the following requirements:
   a) A license from the Health Department
   b) Certificate of "Buena Conducta"
   c) A contract with a milk plant
   d) Proof of acquisition of ongoing concern business—by producing the deed or lease contract.

3. The milk licenses were frozen to number in existence in 1979. This means that anyone who wants to enter the business must purchase an ongoing concern and a milk quota.

4. Once the producer has a license the law and regulations approved thereunder provide a formula for granting the licensed producer a milk quota. This quota is his participation in the milk market of Puerto Rico. It is a share of the milk market and it is a mechanism used to control the amount of milk produced and its price. These quotas can be exchanged from licensed farmer to licensed farmer at any time. Thus, persons outside of the milk industry, who are not licensed, may not get the quotas. However, all transactions with quotas have to be approved by the Administrator pursuant to Law No. 34.

5. Before 1985 quotas had no value. The milk quotas assigned to licensed milk farmers were frozen in 1985. Hence, this asset acquired value.

6. There is no such thing as a registry of quotas. All the information concerning a particular farmer and his transactions are included in his individual file kept by the Administrator. A proposal for such a registry, similar to the registry of real property, adscribed to the office of the Administrator has been drafted but not enacted.

The Trustee claims he can avoid a sale of Debtors' milk quota to the Riveras because the latter failed to perfect the "transfer of

their milk license and quota in the Puerto Rico Milk Industry Regulation Office as required by law." The Trustee further claims, he can avoid FmHA's security interest in the aforementioned milk license and quota.

With this background in mind, let us now turn to facts produced during the hearing.

FINDINGS OF FACT

1. On or about August 1984, Debtor Ramón Hernández Arvelo and his wife, María v. Medina, were the owners of a dairy farm consisting of 69.88 "cuerdas" located at Pozas Ward, San Sebastián, Puerto Rico (property ‡14,294) together with concrete structures, milking parlor and other structures destined to a dairy operation.

2. Debtors also were the owners of certain machinery and equipment, 68 dairy cows, a milk license ‡2266 and a milk quota consisting of 7,295 quarts of milk.

3. In August, 1984, Debtors sold the ongoing dairy operation (i.e., the mortgaged dairy farm with its milking parlor, structures, machinery and equipment, 68 dairy cows, milk license and the milk quota), to the Riveras. Three documents admitted in evidence show the terms of the Agreement:

a. Debtors sold the milk license and quota to the Riveras on or about August 13, 1984, as per Joint Exhibit I.[3] This is a letter written by Mr. Ramón Hernándaz Arvelo to Mr. Rafael Rodríquez of "Fondo Para El Fomento de La Industria Lechera", informing the government agency of the mentioned sale and asking that his license ‡2266 be transferred to Mr. Rivera upon compliance with the necessary requirements.

b. Deed ‡218, executed on August 15, 1984, before Notary Gerardo Pérez Echevarría, recorded at the Property Registry of Aguadilla, at page 132, volume 274, of San Sebastián, Farm ‡14,294, 7th inscription (Government Exhibit "A"). According to this Deed the Debtors sold the

---

**3.** This is the same document as FmHA's Exhibit "G".

land where the dairy operations took place to the Riveras, with all its uses, rights and easements, for the sum of $322,574.21, payable by the Riveras' assuming the liens in favor of FmHA and Corporación de Crédito Agrícola, and paying Debtors $20,000.00 in cash, which sum was paid before the execution of said deed.

c. A chattel mortgage executed by the Riveras in favor of FmHA encumbering 68 head of cattle and the milk quota, which had already been sold to the Riveras by the Debtors. The mortgaged chattels would guarantee payment of an $80,617.50 loan which FmHA granted the Riveras. This chattel mortgage is recorded at page 253, volume 30 of the Registry of Property of Puerto Rico, Aguadilla Part, at entry ‡500.

4. Mr. Ernesto Rivera Roura took over the operations of the dairy farm upon execution of the mentioned deeds, producing milk and selling it to Buena Vista Dairy, Inc., owner of a milk processing plant.

5. Two days after the deeds were executed, Mr. Ernesto Rivera Roura filed his application for the issuance of a milk license at the Office of Regulation of the Milk Industry (hereinafter referred to as "Office of Regulation"). He attached the following documents to the application:

(a) The letter of Mr. Ramón Hernández Arvelo dated August 13, 1984 referred to in the previous paragraph,

(b) A contract between Ernesto I. Rivera Roura and Buena Vista Dairy, Inc. for delivery, receipt and processing of the milk to be produced by the ongoing dairy farm which he had just bought,

(c) Copy of Deed ‡218 of August 15, 1984, evidencing he was an owner of a dairy farm, and

(d) An endorsement dated August 13, 1984, issued by the P.R. Department of Health, authorizing Mr. Rivera to operate the dairy farm.

6. Mr. Luis Fullana Morales, Administrator of the Office of Regulation of the Milk Industry, testified Mr. Rivera's Application complied with all the requirements needed for that Office to issue the request-

ed milk license and transfer the milk quota. However, the Office of Regulation of the Milk Industry was not able to process Mr. Rivera's application for the milk license, issue the license, nor record the transfer of the milk quota he had purchased because of a duly served Court Order.

7. On August 21, 1984, the Superior Court of Puerto Rico, Aguadilla Section, entered an Order in civil case No. 84–1721, forbidding the Office of the Milk Industry, its Administrator, his agents, personnel-in-charge, or employees from transferring or processing any application for transferring debtors' milk license pertaining to a dairy located in San Sebastián, P.R., to a third party. Any person-in-charge who failed to comply with the Order could be held in contempt of Court. This is the Order which Mr. Fullana referred to during his testimony in Court.

8. On October 8, 1984, the District Court of Puerto Rico, Arecibo Section, issued another Order and Writ prohibiting the transfer of debtors' milk license and quota.

9. On May 15, 1985, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code.

10. Plaintiff, Mr. Hans López Stubbe, was appointed Trustee.

11. At the time the petition was filed, the records at the Puerto Rico Milk Industry Regulation Office showed license ‡2266 was issued to Mr. Hernández Arvelo and his milk quota was 7,295 liters.

12. Debtors listed this milk license and quota in Schedule B–3 as personal property of the Debtor at the moment the petition was filed. They estimated the value of these assets at $75,000.00.

13. The parties did not oppose the sale in bankruptcy of the milk quota to Mr. Israel Rodríguez for $17.00 per liter for a total sales price of $124,015.00.

Code Section 544(a)(2) provides, *inter alia*, the trustee obtains the rights of a hypothetical judgment lien creditor as of

the date the petition is filed.[4] "The Section grants this specific status to the trustee, but leaves the determination as to the effect of that status to relevant nonbankruptcy law concerning judgment lien creditors."[5] Relevant nonbankruptcy law, generally speaking means, the law of the state where the property is located. In this case, the applicable nonbankruptcy law is the law of Puerto Rico.[6] To summarize, the powers of the trustee as a hypothetical judgment lien creditor, "... in every case governed by Code 544(a), are those which state law will allow to a suppose or hypothetical creditor of the debtor who, as the commencement of the case, had completed the legal (or equitable) processes for perfection of the lien upon all property available for satisfaction of his claim against the debtor."[7]

■■■ Under the Civil Code of Puerto Rico, a sale is perfected and binding between the vendor and the vendee once there is an agreement upon the object to be sold and its price even though neither has been delivered.[8] However, title is transferred once delivery of the thing sold is consummated.[9] Delivery of the thing sold is governed by Civil Code's Article 1351, 31 Laws of P.R.Ann., Section 3811, which states:

"A thing sold shall be considered as delivered, when it is placed in the hand and possession of the vendee.

When the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

Delivery of an incorporeal thing is governed by Article 1353 of the Code, 31 Laws of P.R.Ann., Section 3813, which states:

"With regard to incorporeal thing the provisions of the second paragraph of Section 3811 of this title shall govern. In any other case in which it cannot be applied, the placing of the title of ownership in the possession of the vendee or the use which he may make of his right with consent of the vendor shall be considered delivery".

The foregoing articles would apply to the facts of this case in the absence of a specific determination by the Legislature of Puerto Rico defining the concept of delivery of milk quotas in the cited Law No. 34 or in the regulations approved thereunder.[10]

We have reviewed the mentioned law and the regulations approved thereunder. We are unable to locate the specific section of the law which Mr. Fullana and the Trustee state calls for, "all transactions with milk quota have to be approved by the Administrator pursuant to Law No. 34."[11] This asseveration is the crux of the matter. It is undisputed that the Administrator did not explicitly approve the transfer of the milk quota, and for that matter the milk

---

4. The nature and policy basis for the trustee's avoiding power are explained in 2 *Norton Bankruptcy Law and Practice*, Sections 30.01 thru 30.06 (1988).

5. 2 *Norton Bankruptcy Law and Practice*, Section 30.04 (1988).

6. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

7. 4 *Collier on Bankruptcy*, Section 544.02 (15th ed.).

8. Article 1339, 31 Laws of P.R.Ann. Section 3746; *Betancourt Fúster v. Srio. de Hacienda*, 104 D.P.R. 174 (1975).

9. *Benítez v. Llompart*, 51 P.R.R. 641 (1936); *Valcárcel v. Sancho, Treas.*, 61 P.R.R., 207

(1942); *Segarra v. Vda. de Lloréns*, 99 D.P.R. 60 (1970).

10. "Una ley especial sobre determinada materia debe prevalecer sobre cualquier otro precepto aplicable que sea de carácter general. [cit. omitted] '[L]as materias especiales ... se rigen por sus leyes especiales y por el derecho jurisprudencial que se va formando en torno a los estatutos. El Código Civil, desde luego, como espina dorsal que es de nuestro derecho privado, queda siempre con acervo supletorio.'" [cit. omitted] *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 94 (1981).

11. Furthermore, the Trustee argues that until this approval is given, the transfer of the milk quota is not perfected. This argument is likewise bereft of legal citations.

license from Debtors to the Riveras because of the Court's restraining order.

The Court acknowledges the deference given to administrative officers in the interpretation of the specialized laws which they apply. Pursuant to such deference, the Court hereby orders the Trustee to file and notify a memorandum of law specifically geared toward pointing out the articles of Law No. 34 or its regulation which he and Mr. Fullana believe calls for the Administrator to approve the transfer of the milk quota, by April 26, 1991. Rehearing on this matter is scheduled for April 29, 1991 at 4:00 P.M. Mr. Fullana Morales together with counsel for the parties will be present.

Adversary proceeding No. 87–0156 is held in abeyance pending the outcome of this proceeding.

Clerk will give immediate notice of this Order, and remind the Court that Adversary Proceeding No. 87–0156 is pending the outcome of this Complaint. Both matters should be brought to the attention of the Court simultaneously.