# 2006 DTA 56

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL VIII**

VISTAS DE GUAYNABO, S.E.
Demandante-Apelante

v.

S.N.T. LEXINGTON CORPORATION; 6491 SNT LEXINGTON CORPORATION; SUCESIÓN
LIC. ALBERTO GERARDINO COMPUESTA POR FULANO DE TAL, SUTANO DE TAL Y OTROS;
ENRIQUE MARIN; LUZ GERARDINO; JUAN JOSE GERARDINO; JOSÉ A. GERARDINO; LUCRECIA
GERARDINO; IVONNE YORDAN; JOHN GERARDINO; JANE GERARDINO Y SUS RESPECTIVAS
SOCIEDADES GANANCIALES; CORPORACIONES A B C D Y E; LUZ M. GILBES LUIS FLORES;
ANA M. ROSA SANTIAGO, JOHN DOE Y JANE DOE
Demandados-Apelados

Núm. KLAN-2006-00086

San Juan, Puerto Rico, a 10 de marzo de 2006

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

En la causa de epígrafe, Vistas de Guaynabo, S.E. (Vistas o apelantes), solicita que revoquemos la Sentencia emitida el 28 de octubre de 2005, notificada el 7 de noviembre de 2005, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), causa civil número DAC1995-0765 (1505) en la que se desestimó sumariamente una demanda incoada por Vistas contra S.N.T. Lexington Corp. y otros (Lexington o apelados) por daños y perjuicios.

A su vez y como segundo señalamiento de error en apelación, Vistas solicita la revocación de la Orden emitida el 15 de diciembre de 2005, notificada y archivada en autos el 23 de diciembre de 2005, en la que el TPI declaró No Ha Lugar una *"Solicitud de Determinaciones Adicionales de Hechos y de Derecho"* radicada por Vistas, al amparo de la Regla 43.3 de Procedimiento Civil, 32 LPRA Ap. III, R. 43.3.

## HECHOS

Los antecedentes que presenta el recurso de epígrafe fueron ya expuestos por este Foro Apelativo y no están en controversia. En aras de la economía procesal, reproducimos aquí, en lo pertinente, los hechos medulares que informa esta causa, conforme ya lo hiciéramos en la Sentencia del 28 de mayo de 2004, en el expediente KLCE-2004-00324, 2004 PR App. Lexis 596:

*"El 26 de mayo de 1993, Vistas de Guaynabo, S.E. (Vistas), representada por el Sr. Marcos Calzadilla y Lexington, representada por el Sr. Luis Flores, suscribieron un contrato de opción de compraventa mediante el cual Lexington otorgó a favor de Vistas una opción de compra sobre cuatro fincas urbanas colindantes entre sí y sitas en el Municipio de Guaynabo. La opción estaba condicionada a un primer pago de $10,000.00 por los primeros 6 meses, un segundo pago de $30,000.00 por una extensión de seis meses adicionales y un tercer pago de $30,000.00 por una segunda extensión de seis meses. El contrato dispuso además que en el caso que Vistas no ejerciere su derecho de opción dentro de los períodos establecidos, las cantidades entregadas como precio de la opción y sus prórrogas serían para el beneficio de Lexington. No obstante, Vistas no efectuó el pago del precio de la opción inicial ni de ninguna de sus prórrogas, por lo que nunca se dio el contrato de opción a compra entre las partes. (Ap. 65).*

*Así las cosas, el 26 de julio de 1994, Vistas y Lexington, esta última entonces representada por el Lcdo. Alberto Gerardino, suscribieron "una enmienda al contrato de opción" en la que expresaron que en las propiedades objeto del contrato había resultado un exceso de área de aproximadamente una cuerda por lo que Lexington haría las diligencias correspondientes para llevar al Registro tal dato y enmendar la cabida. Además acordaron segregar varias de las fincas. Los términos de la opción comenzarían a computarse a partir del 4 de febrero de 1994. En este segundo "contrato" de opción a compra tampoco se realizó pago alguno del precio pactado en cuanto a la opción inicial ni de ninguna de sus prórrogas y nunca fue ejercitado. (Ap. 72).*

*En febrero de 1995, el Lcdo. Gerardino falleció y con posterioridad Vistas adviene en conocimiento de la existencia de unas escrituras públicas que nunca fueron presentadas al Registro de la Propiedad, mediante las cuales Lexington alegadamente vendió las fincas opcionadas por Vistas a unas corporaciones propiedad de los hermanos del Lcdo. Gerardino.*

*Luego de conocer de la [mencionada] venta de los terrenos opcionados [a las señaladas corporaciones de los hermanos del fenecido Lcdo. Gerardino], Vistas y Lexington enmendaron por tercera vez el contrato de opción el 22 de mayo de 1995 haciéndolo retroactivo al 19 de mayo de 1995. De tal forma se hizo constar que Vistas efectuó un primer pago de $10,000.00, que al momento de la firma del contrato se entregarían $30,000.00 y que Vistas tendría 60 días para hacer el tercer pago por la suma de $30,000.00. Vencidos los primeros términos de la opción, Vistas no pagó esta última partida ni solicitó prórroga alguna para el ejercicio de la opción.*

*El 6 de octubre de 1995, Vistas presentó demanda contra SNT Lexington Corporation también conocida por Lexington Corporation, 6491 SNT Lexington Corporation, la sucesión del Lcdo. Alberto Gerardino (compuesta por Ivonne Yordan y Luz, Juan José, José A. y Lucrecia, todos de éstos de apellido Gerardino), Enrique Marín, las corporaciones de los Gerardinos, Luis Flores, Ana M. Rosa Santiago y Luz M. Gilbes. En la misma alegó que como consecuencia del incumplimiento de los acuerdos y las falsas representaciones de los demandados, Vistas no pudo realizar el proyecto Guaynabo Park lo que le causó pérdidas económicas, daños, angustias y sufrimientos mentales."*

Continuado el proceso ante el TPI en el expediente DAC1995-0765 (505), el 6 de octubre de 1999, Lexington radicó una Moción de Sentencia Sumaria en la que arguyó que Vistas no efectuó sus reclamaciones dentro del plazo de la opción, por lo que no tenia derecho a indemnización alguna. A su vez, Lexington recalcó que Vistas no había pagado los plazos establecidos en la opción, por lo que nunca ejercieron dicho derecho.

El 25 de enero de 2000, Vistas suscribió una oposición a la Moción de Sentencia Sumaria, en la que expuso las razones por las cuales no había efectuado los pagos en cuestión. Entre las razones consta el haberse enterado de que alegadamente el terreno opcionado no pertenecía en su totalidad a Lexington, por lo que el proyecto, según planificado, no se podía llevar a cabo por Vistas.

Luego del trámite en el que Vistas informó que desistía del pleito en cuanto a algunas de las partes demandadas, ■ el 20 de agosto de 2002, el TPI declaró No Ha Lugar la Moción de Sentencia Sumaria presentada por Lexington. El tribunal concluyó que existía controversia de hechos materiales, toda vez que no tenían ante sí todos los hechos pertinentes a la titularidad de los terrenos objeto del pleito y no estaban en condiciones de determinar si los demandados incurrieron en los actos constitutivos de dolo y falsa representación, entre otros. Ap., pág. 123.

No conforme con dicha determinación, el 13 de septiembre de 2005, Lexington volvió a radicar una segunda Moción de Sentencia Sumaria, utilizando básicamente los mismos fundamentos esbozados anteriormente y añadiendo el planteamiento de insolvencia de la parte apelante. Vistas presentó su oposición a dicha segunda solicitud el 28 de octubre de 2005.

El 28 de octubre de 2005, notificada el 7 de noviembre del mismo año, el TPI acogió esta segunda Moción y desestimó sumariamente la demanda incoada por Vistas. Determinó el hermano foro de instancia que Vistas no podía alegar que hubo fraude o engaño por parte de Lexington ante Vistas, por tratar de venderle unas tierras que no le pertenecían, ya que según surge claramente de las propias declaraciones de Vistas, los contratantes habían enmendado y firmado un contrato con fecha posterior a Vistas tener conocimiento de ese dato. El foro de instancia también concluyó que Vistas no había ejercitado la opción a compra, ni había efectuado los pagos para poder prorrogar el término de la opción, por lo que carecía de causa de acción contra Lexington.

No conforme, Vistas acude vía el recurso de epígrafe e imputa al foro de instancia incidir de la siguiente forma:

*"a. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EL (SIC) EMITIR SENTENCIA SUMARIA*

*DESESTIMANDO LA DEMANDA CUANDO EXISTÍAN CONTROVERSIAS SOBRE HECHOS ESENCIALES.*

*b. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR "NO HA LUGAR" LA SOLICITUD DE DETERMINACIONES ADICIONALES DE HECHOS Y DE DERECHO PRESENTADA POR LA PARTE APELANTE."*

Transcurrido el término reglamentario dispuesto en la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22, sin que la parte apelada haya comparecido en autos o solicitado prórroga para ello, consideramos sometida la causa y resolvemos.

## EXPOSICIÓN Y ANÁLISIS

Como se sabe, se denomina contrato de opción al convenio por el cual una parte –llamada concedente, promitente u optatario– concede a la otra –llamada optante–, por tiempo fijo y en determinadas condiciones la facultad, que se deja exclusivamente a su arbitrio, para decidir respecto a la celebración de un contrato principal. *Mayagüez Hilton, Corp. v. Humberto Betancourt,* 155 DPR ___ (2002), **2002 JTS 29**; 2002 PR Sup. Lexis 23; *Atocha Thom McAn, Inc. v. Registrador,* 123 DPR 571, 583 (1989); *Del Toro v. Blasini,* 96 DPR 676, 681-682 (1968).

Se trata de un contrato *sui generis* con sustantividad propia y perfiles específicos, muy similar al contrato de promesa unilateral de venta aceptada. *Pérez v. Sanpedro,* 86 DPR 526, 529-530 (1962).

El atípico contrato de opción a compra, en gran medida reglado en esta jurisdicción por la casuística, es un derecho de carácter personal incapaz de convertirse en derecho real de propiedad hasta que una vez ejercitada en tiempo hábil la opción, se convierta en mutua promesa de compraventa **[2]** y luego en compraventa, mediante las respectivas prestaciones y aceptaciones. *Rosa Valentín v. Vázquez Lozada,* 103 DPR 796, 810-812 (1975); *Jordán Rojas v. Padró González,* 103 DPR 813, 817 (1975); *Del Toro v. Blasini, supra,* a las páginas 681-682; *Pérez v. Sanpedro, supra; Rossy v. Tribunal Superior,* 80 DPR 729 (1958).

*En la celebración de todo contrato de compraventa, de acuerdo con nuestro Derecho Civil, existen dos etapas que no deben ser confundidas, puesto que de ellas emanan relaciones jurídicas distintas. La primera es la* **perfección** *del contrato que tiene lugar desde que los contratantes convienen en la cosa objeto del contrato y en el precio, aunque ni la una ni el otro se hayan entregado. Artículo 1339 del Código Civil (ed. 1930). Una vez tiene lugar la perfección, el contrato es obligatorio para ambos, pudiendo compelerse mutuamente al cumplimiento específico de lo pactado.*

*Ello no obstante, el título dominical de la propiedad sobre la cosa rendida no se trasmite al comprador hasta que tiene lugar la segunda etapa, la* **consumación,** *la que ocurre al verificarse la entrega de la cosa vendida. A este efecto dice Manresa, comentando el artículo correspondiente, el 1450, del Código Civil español:*

*Desde que se consiente, y sin necesidad de ninguna otra circunstancia, el contrato, repetimos, está perfecto y nacen las obligaciones; pero la trasmisión de la propiedad no existe hasta que la cosa ha sido entregada. La entrega de la cosa se refiere al período de consumación; en el artículo que estudiamos se trata tan sólo de fijar el momento de la perfección.* 10 Manresa, Código Civil Español, pág. 60. *Valcarcel v. Sancho Bonet,* 61 DPR 213 (1942) (énfasis suplido). Véase también *Betancourt Fúster v. Srio. de Hacienda,* 104 DPR 174, 178 (1975).

*En el reciente caso de Mayagüez Hilton Corp. v. Humberto Betancourt, supra, se hace directa referencia a la doble vinculación entre optatario y optante. La primera sólo atiende al contrato de opción ya perfeccionado (derecho a optar) y la segunda al contrato definitivo contemplado como posible resultado final de la negociación (capaz de ser perfeccionado y consumado), porque no se va al contrato de opción como interés único o último.*

*El tratadista Puig Brutau señala que en este tipo de contrato no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado. Es decir, no hay un contrato que sea sólo de opción, sino una posibilidad de optar al contrato que se haya tenido en cuenta como resultado final de la negociación. (Nota al calce omitida).*

*El concedente de la opción se encuentra vinculado en un doble aspecto, no estorbar el posible cumplimiento del contrato definitivo y cumplir con éste. Torres Lana advierte, "no parece que el concedente se vea impedido para celebrar cualesquiera otros contratos, sino solo aquellos que supongan un obstáculo al ejercicio de la opción concedida". (Nota alcace suprimida)*

*Sobre este particular, Sánchez Fontans señala:*

*" El pacto de opción genera un derecho potestativo que atribuye al titular la potestad de producir el efecto, normalmente la conclusión del contrato, por su sola declaración de voluntad. A ese fin es irrelevante la conducta asumida por el oferente. Sin embargo, el oferente puede realizar actos que impidan el nacimiento o el ejercicio de los derechos que resultan del contrato definitivo y compromete en tal caso su responsabilidad contractual. (Énfasis nuestro).*

*Por tanto, entendemos que así como el concedente tiene la obligación de no hacer nada que pueda frustrar la efectividad del contrato si el optante ejercita a tiempo su derecho, tampoco puede incurrir en actuaciones voluntarias, negligentes o dolosas que puedan frustrar la expectativa del optante a hacer ejercicio de su derecho a opción. De hacerlo, incurrirá en responsabilidad contractual y el optante perjudicado podrá interponer una acción indemnizatoria contra el concedente que frustró o perjudicó el ejercicio de la facultad de optar. Mayagüez Hilton, Corp. v. Humberto Betancourt, supra.*

También la doctrina reitera claramente que el contrato de opción termina: 1) mediante su ejercicio positivo, y 2) por el transcurso del término pactado, sin que el optante ejerza tal derecho.

*El derecho de opción se extingue mediante su ejercicio positivo, quedando entonces perfeccionado el contrato aceptado. Igualmente se extingue, sin este efecto positivo, si se deja transcurrir el plazo concedido para optar sin hacer ninguna manifestación, o haciendo alguna que tenga la eficacia de una renuncia del derecho. Por la naturaleza temporal del contrato, este no es imaginable sin un plazo para su ejercicio, por reducido o indeterminado que sea. Por tanto, se suele visualizar el plazo para el ejercicio de la opción como uno de caducidad. Por tal razón, el derecho de optante a declarar su voluntad de dar efectividad al contrato por el cual se opta, caduca, si ésta no es notificada al concedente durante la vigencia del plazo de la opción, si este se hubiese fijado. (Nota al calce suprimida) Mayagüez Hilton Corp. v. Humberto Betancourt, Supra.*

Examinemos esta doble vertiente obligacional, ante los hechos que informan esta causa.

Partiendo de la premisa de que efectivamente Vista y Lexington acordaron un contrato de opción de compraventa, finalmente en la tercera enmienda del 22 de mayo de 1995, retroactivo al 19 de mayo de 1995, con el pago de $10,000.00 como precio de la opción, **lo cierto es que era de conocimiento pleno de optante y optatario que los terrenos opcionados se encontraban inscritos a favor de Lexington en el Registro de la Propiedad, pero que también existían escrituras de compraventa, no presentadas al Registro, traspasando el título dominical a corporaciones cuyos accionistas eran hermanos del Lcdo. Gerardino.**

Por tanto, esa preconocida condición sobre la titularidad dominical de la cosa contractual -- y lo que ello realmente signifique --, no puede luego ser explotada por Vista como válido planteamiento para tratar de imputar dolo contractual a Lexington, respecto al contrato de opción a compra se refiere.

También consta de autos, lo cual no está en controversia, que Vista nunca ejercitó el derecho de opción en tiempo hábil, es decir antes de que el mismo venciera. Por lo tanto queda meridianamente claro que nunca entró aquí en juego la subsiguiente etapa de mutua promesa, capaz de obligar a la compraventa. **[3]** No habiendo ejercitado Vistas su derecho a opción, no existe un acuerdo de mutua promesa de comprar y vender por lo que tampoco puede luego Vistas alegar contra Lexington incumplimiento alguno con razón a la consumación de la compraventa sobre las fincas opcionadas, y en su defecto la compensación de daños.

Por lo tanto, el TPI no erró, puesto que para poder ejercer la acción de daños por incumplimiento en cuanto a las obligaciones contraídas por Lexington en el contrato de **opción a compra,** Vistas tenía que establecer que desconocía que las fincas no eran propiedad de Lexington por razón de que realmente las había vendido a un tercero. De igual forma, para accionar en daños contra Lexington por no poder adquirir el título dominical y la posesión de tales fincas, Vistas tenía primero que ejercer la opción en tiempo hábil y reclamar la consumación contractual (transferencia de titular dominical sobre las fincas) luego de cumplir con sus contraprestaciones, por lo que tampoco puede reclamarle a Lexington daño por alegadamente no poder efectuarse el traspaso titular. En tal situación no procede consumación alguna.

En cuanto al segundo señalamiento de error, basta señalar que éste no es más que un replanteamiento del primero, en forma elíptica. Aun estableciendo como hecho cierto lo que se expone en el segundo señalamiento de error, ello no varía la ecuación jurídica que gobierna este caso y discutimos anteriormente. Por ende, este señalamiento de error tampoco se cometió.

Vistas no ha demostrado que el TPI haya errado en cuanto al primer y segundo señalamiento de error.

La sentencia sumaria gobernada por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36, constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes que la regla llama *"materiales"*; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Vera et. al. v. Dr. Bravo et. al.*, 161 DPR ___ (2004), **2004 J.T.S. 40**; *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994). Únicamente se concederá el dictamen sumario cuando la evidencia que se presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio.

Es reiterada la doctrina al efecto de que mediante dicho mecanismo se busca obtener un remedio rápido y eficaz en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre hechos importantes y pertinentes (*"materiales"*) que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.*, 135 DPR 363, 376 (1994).

De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos, para adjudicar credibilidad, precisamente cuando de los documentos no refutados conste que realmente no existen controversias de hechos sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Caquías v. Asoc. Res. Mansiones de Río Piedras*, 134 DPR 181, 216 (1993); *Consejo Tit. Cond. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 548 (1991).

En tal exégesis se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente (*"material"*) como queda dicho, y que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio aunque no sea ésta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A & W Developers S.E.*, 137 DPR 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR

714, 720 (1986).

Ante la presencia de conflictos reales y sustanciales respecto a hechos importantes y pertinentes, aún en caso de razonable duda al respecto, el foro debe resolver en contra de quien presentó la sentencia sumaria, pues el trámite de la sentencia sumaria no permite que el tribunal entonces dirima cuestiones de credibilidad sin la celebración de una vista evidenciaria plenaria. *Rivera v. Depto. de Hacienda*, 149 DPR 141 (1999); *Col Ing. Agrim. P.R. v. A.A.A.*, 131 DPR 735, 781-782 (1992). Tal norma busca minimizar el peligro de que un trámite sumario pueda prestarse para despojar a un litigante de su *"día en corte"*, principio elemental del debido procedimiento de ley. *Roig Comercial Bank v. Rosario Cirino*, 126 DPR 613, 617-618 (1990).

En el caso de autos no existen controversias de hechos que impidieran que el pleito se atendiera por la vía sumaria. Toda vez que Vistas conocía que las fincas opcionadas constaban registralmente inscritas a favor de Lexington y también sabía de la existencia de las escrituras no presentadas al Registro de la Propiedad, en que estas fincas se venden (supuestamente o realmente) a corporaciones cuyos accionistas eran hermanos del fenecido Lcdo. Gerardino, no puede luego utilizar tal situación para alegar dolo en la contratación de opción a compra. Luego, también consta claramente de autos que Vistas nunca ejercitó su derecho a opción, por lo que tampoco puede reclamar o alegar contra Lexington in cumplimiento alguno de índole contractual de compraventa, o reparo de daños en forma subsidiaria.

## DICTAMEN

Por las razones antes esbozadas, se Confirma la Sentencia emitida el 28 de octubre de 2005 por el Tribunal de Primera Instancia, Sala de Bayamón, en la que se desestima por vía sumaria la demanda incoada por Vistas de Guaynabo, S.E. contra Lexington Corp.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones